*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name:  09a0336p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DANIEL J. SEGAL, on behalf of himself, his
minor children and all others similarly
situated,

                *Plaintiff-Appellant,*

     *v.*

FIFTH THIRD BANK, N.A., et al.,

                *Defendants-Appellees.*

No. 08-3576

_____

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 07-00348—Sandra S. Beckwith, District Judge.

Argued:  June 11, 2009

Decided and Filed:  September 17, 2009

Before:  SUTTON and GRIFFIN, Circuit Judges; LIOI, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  David A.P. Brower, LAW OFFICE, New York, New York, for Appellant.
Patrick F. Fischer, KEATING MUETHING & KLEKAMP PLL, Cincinnati, Ohio, for
Appellees.  **ON BRIEF:**  David A.P. Brower, LAW OFFICE, New York, New York,
for Appellant.  Patrick F. Fischer, Joseph M. Callow, Jr., Rachael A. Rowe, Brian P.
Muething, KEATING MUETHING & KLEKAMP PLL, Cincinnati, Ohio, for
Appellees.

_____

## OPINION

_____

     SUTTON, Circuit Judge.  Daniel Segal challenges the district court's dismissal
of this class action, premised on state-law claims of breach of fiduciary duty and breach

_____

[*]The Honorable Sara Lioi, United States District Judge for the Northern District of Ohio, sitting
by designation.

of contract, against Fifth Third Bank and its holding company, Fifth Third Bancorp. Because the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. No. 105-353, 112 Stat. 3227, bars Segal's claims, we affirm.

I.

Segal is a beneficiary of trust accounts formerly administered by Fifth Third. In 2007, he sued the Bank on behalf of himself, his children and "all beneficiaries of trust, estate, or other fiduciary accounts for which the Bank . . . acted as a . . . corporate fiduciary at any time from March 1, 2001 to the present." Am. Compl. ¶ 57. Fifth Third, the complaint alleges, breached its fiduciary and contractual duties to the class in three ways: (1) It invested fiduciary assets in proprietary (and often higher-fee) Fifth Third mutual funds rather than superior funds operated by the Bank's competitors; (2) it promised trust beneficiaries that their fiduciary accounts would receive "individualized" management and breached that agreement by providing standardized and largely automated management, Am. Compl. ¶ 87, often by "relatively inexperienced" and "low-level" employees, Am. Compl. ¶¶ 35(e), 47; and (3) it invested too many of the funds' assets in low-yielding investments in order to cover the accounts' near-term tax liabilities.

Relying on SLUSA, which prohibits individuals from filing class actions involving fifty or more people seeking to vindicate state-law securities-related claims, the district court granted Fifth Third's motion to dismiss for failure to state a claim. This appeal followed.

II.

We give fresh review to a district court's order to dismiss a claim under Civil Rule 12(b)(6). *Mitchell v. McNeil*, 487 F.3d 374, 376 (6th Cir. 2007). We must accept all allegations in the complaint as true. *Id.* And we must determine whether the allegations plausibly state a claim for relief. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).

SLUSA was not enacted in a vacuum.  In 1995, Congress passed the Private Securities Litigation Reform Act (PSLRA), Pub. L. No. 104-67, 109 Stat. 737, which curbed "perceived abuses" of federal class-action securities litigation by imposing special requirements and obstacles on claimants filing such actions.  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006); *see also* 15 U.S.C. §§ 77z-1, 78u-4.  After PSLRA became law, some claimants responded by "avoid[ing] the federal forum altogether," bringing "class actions under state law, often in state court" instead.  *Dabit*, 547 U.S. at 82.

That apparently was not what Congress had in mind.  In 1998, it sought to close the gap in coverage by enacting SLUSA.  To "prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of" PLSRA, *Dabit*, 547 U.S. at 82 (quoting SLUSA, § 2), SLUSA expressly prohibits certain state law class actions:

> (1)  Class action limitations.
>
> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
>> (A)     an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>>
>> (B)     that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b); *accord id.* § 78bb(f)(1).  SLUSA prohibits a claimant from filing a class action when four things are true:  (1) the class action is "covered," which means it involves more than fifty members; (2) the claims are based on state law; (3) the action involves a "covered security," which means a nationally listed security; and (4) the complaint alleges "an untrue statement or omission of a material fact in connection with" buying or selling a covered security or a "manipulative or deceptive device or contrivance in connection with" buying or selling a covered security.  15 U.S.C.

§ 77p(b); *accord id*. § 78bb(f)(1); *see also In re Enron Corp. Sec.*, 535 F.3d 325, 338–39 (5th Cir. 2008).

The Supreme Court has construed the Act's expansive language broadly. *Dabit*, 547 U.S. at 85–86. A former Merrill Lynch stock broker, Dabit filed a state-law class-action securities claim alleging that his employer fraudulently manipulated stock prices, causing him, other brokers and their clients to hold onto overvalued stocks. *See id*. at 75. "A narrow reading of the statute," the Court concluded, would fail to respect "ordinary principles of statutory construction," would "undercut the effectiveness" of PSLRA and would "run contrary to SLUSA's stated purpose." *Id.* at 86. In holding that the Act barred Dabit's claim, the Court thus "presum[ed] that Congress envisioned a broad construction" of SLUSA's preclusive reach. *Id.*

Today's parties share some common ground. They agree that this action involves (1) a "covered class action" because it includes more than fifty class members, (2) state-law claims and (3) "covered securities," namely the proprietary Fifth Third mutual funds. *See* 15 U.S.C. §§ 78bb(f)(5), 77p(f). That leaves the last question: Does the amended complaint allege an "untrue statement" or a "material omission" of fact "in connection with the purchase or sale" of Fifth Third mutual funds or allege that the Bank used a "manipulative or deceptive device or contrivance in connection with the purchase or sale" of Fifth Third mutual funds? *See* 15 U.S.C. §§ 78bb(f)(1), 77p(b). If either one is true, SLUSA bars the complaint.

Segal's amended complaint alleges misrepresentations, material omissions and manipulation. Consider: it alleges that Fifth Third failed to inform trust beneficiaries that their trust accounts would be invested in proprietary mutual funds; that the Bank carried out a "planned corporate scheme" that was "intended to (and did) lure grantors, testators, and others to designate [Fifth Third as trustee]," Am. Compl. ¶¶ 25, 29; that the Bank purported to "provide planning 'advice' under the guise that the advice was customized when, in fact, it [was] not," Am. Compl. ¶ 35; that the Bank "did not deal honestly, ethically, fairly, and/or in good faith" with the class, Am. Compl. ¶ 6; that the Bank intentionally and "knowingly overcharged" its trust clients, Am. Compl. ¶ 75; and

that the Bank's policies amounted to a "scheme."  Am. Compl. ¶¶ 25, 29, 38–39, 49–51, 59, 64, 66–67, 70, 75, 84.  The complaint incorporates each allegation and makes them applicable to all counts of the complaint.

The amended complaint also alleges that Fifth Third made misrepresentations to the trust beneficiaries and otherwise manipulated them "in connection with" the sale of Fifth Third mutual funds, a conclusion that follows from *Dabit.  See U.S. Mortgage, Inc. v. Saxton*, 494 F.3d 833, 844 (9th Cir. 2007).  The "in connection with" clause, *Dabit* held, has the same meaning as the same words used in § 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)(5).  *See Dabit*, 547 U.S. at 85–86; *see also* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(c).  Before the passage of SLUSA, courts had construed the "in connection with" clause "flexibly," not "technically and restrictively," *S.E.C. v. Zandford*, 535 U.S. 813, 819 (2002) (internal quotation marks omitted), requiring only that "the fraud alleged coincide with a securities transaction—whether by the plaintiff or by someone else," *Dabit*, 547 U.S. at 85 (internal quotation marks omitted).  Because Congress could "hardly have been unaware" of this broad construction when it chose to use the same phrase in SLUSA, *Dabit* held that the same meaning applies to both sets of laws.  547 U.S. at 85; *see Siepel v. Bank of America*, 526 F.3d 1122, 1127 (8th Cir. 2008); *Saxton*, 494 F.3d at 844.

The amended complaint satisfies this modest requirement.  All of Segal's counts—breach of fiduciary duty, unjust enrichment, breach of contract—revolve around Fifth Third's decision to buy mutual fund shares.  Segal's allegations do not merely "coincide" with securities transactions; they depend on them.  *Cf. Siepel*, 526 F.3d at 1124 (concluding that SLUSA prohibits "state-law claims that a trustee breached its fiduciary duty by failing to disclose conflicts of interest in its selection of nationally-traded investment securities").  Under these circumstances, the district court properly concluded that SLUSA requires the dismissal of this complaint.

Segal first quarrels with the district court on the ground that it failed to respect the following disclaimer in his amended complaint: "None of the causes of action stated herein are based upon any misrepresentation or failure to disclose material facts to

plaintiff . . . ." Am. Compl. ¶ 2.  How, Segal says, can he be tagged with alleging what he expressly disclaimed?

It is not that simple.  Courts may look to—they must look to—the substance of a complaint's allegations in applying SLUSA.  Otherwise, SLUSA enforcement would reduce to a formalistic search through the pages of the complaint for magic words—"untrue statement," "material omission," "manipulative or deceptive device"—and nothing more.  But a claimant can no more elude SLUSA's prohibitions by editing out covered words from the complaint than by disclaiming their presence.  For the same reason a claimant does not have the broader authority to disclaim the applicability of SLUSA to a complaint, he cannot avoid its application through artful pleading that removes the covered words from the complaint but leaves in the covered concepts.  *See Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (3d Cir. 2005); *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir. 2004).

To do otherwise would "frustrate the objectives" of PSLRA and SLUSA, *Dabit*, 547 U.S. at 82, and re-open the "'federal flight' loophole" SLUSA sought to close. *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 (2d Cir. 2003).  The question under SLUSA is not whether the complaint uses the prohibited words:  "an untrue statement or omission of a material fact" or a "manipulative or deceptive device or contrivance."  It is whether the complaint covers the prohibited theories, no matter what words are used (or disclaimed) in explaining them.  *See Rowinski*, 398 F.3d at 300; *Dudek v. Prudential Secs., Inc.*, 295 F.3d 875, 879–80 (8th Cir. 2002); *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1094 (11th Cir. 2002).

Although Segal disclaims any allegation of "misrepresentation or failure to disclose material facts," Am. Compl. ¶ 2, the remainder of the amended complaint shows otherwise.  Four paragraphs after the disclaimer, Segal announces that "[t]he gravamen of this Complaint is that the defendants did not deal honestly, ethically, fairly, and/or in good faith with Fifth Third's Beneficiaries." Am. Compl. ¶ 6.  And he corroborates this "gravamen" of the complaint with allegations of fraud, manipulation and "scheme."

Segal persists that this approach "magically transform[s]" his claims from "garden-variety" state-law claims into federal securities claims. Reply Br. at 12. But that is not true. SLUSA does not convert state-law claims into federal securities claims. It says that certain types of state-law claims may not be filed in state court as a class action if the class includes more than fifty people. Nothing about this procedural restriction on how Segal vindicates his state-law rights converts his claims into federal claims.

Also unavailing is Segal's contention that the state-law claims do not depend upon allegations of misrepresentation or manipulation—and thus are not material to them. But that again is not how SLUSA works. The Act does not ask whether the complaint makes "material" or "dependent" allegations of misrepresentation in connection with buying or selling securities. It asks whether the complaint includes these types of allegations, pure and simple. Recall: "No covered class action may be maintained . . . alleging—an untrue statement or omission of a material fact . . . or that the defendant used or employed any manipulative or deceptive device in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b); *accord* 15 U.S.C. § 77bb(f)(1). Add to this the Supreme Court's admonition that SLUSA's prohibitions must be "broad[ly]" construed, *Dabit*, 547 U.S. at 86, and it becomes clear that we have no license to draw a line between SLUSA-covered claims that must be dismissed and SLUSA-covered claims that must not be.

In his reply brief, Segal brings to our attention a decision from the Third Circuit that appears to provide some support for his position on this point. "While it may be unwise . . . to set out extraneous allegations of misrepresentations in a complaint," the court says, "the inclusion of such extraneous allegations does not operate to require that the complaint must be dismissed under SLUSA." *LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008). But this language from *LaSala* is not only *dicta*—the court had already resolved the issues at hand—it also contradicts an earlier decision from the Third Circuit. In *Rowinski*, 398 F.3d at 300, the court held that whether an alleged misrepresentation is "an essential legal element" is "immaterial under [SLUSA]." We

agree—with *Rowinski*, that is. The terms of SLUSA do not speak to "material," "dependent" or "extraneous" allegations; they speak to covered allegations. A "broad" interpretation of the Act leaves no room for this inquiry—a difficult one at that to implement—which is why we reject it and why (we presume) *Rowinski* rejected any such suggestion earlier.

A similar flaw undermines Segal's argument that SLUSA prohibits claims only if the underlying factual allegations would otherwise give rise to an actionable claim under federal securities laws. That is not what the Act says. And *Dabit*, at any rate, held that SLUSA precludes even state law claims that would not meet the "policy"-based standing limitations the Court has attached to Rule 10b-5, 547 U.S. at 84, which explains why several other circuits have rejected this narrow interpretation. *See, e.g.*, *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1285–86 (10th Cir. 2008) (collecting cases).

Segal claims that this approach allows SLUSA to "eliminate[] any remedy against an unfaithful fiduciary" short of removing the trustee. Appellant's Letter Br. at 8. "Congress," Segal adds, "could not have intended to prevent trust beneficiaries from pursuing damage claims for mismanagement against trust fiduciaries." *Id.* Yet Congress has done nothing of the sort. "The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist." *Dabit*, 547 U.S. at 87. SLUSA leaves open many avenues for claimants like Segal to vindicate their rights.

Segal is right that "the plaintiff is the master of the complaint," Appellant's Br. at 10, but that is why he must take responsibility for the allegations included in it. SLUSA may be unforgiving when it applies, but it details in clear language when that is so. It puts claimants to a choice. Here, for example, Segal could have filed an identical complaint on behalf of himself and up to forty-eight others and avoided SLUSA preclusion. Or he could have filed a complaint on behalf of a large class of plaintiffs, so long as he complied with the requirements of PSLRA. Or he might have been able to press some class action counts—perhaps the breach of contract claim—in a complaint

that included no covered allegations. But where, as here, a complaint meets the relatively straightforward requirements of 15 U.S.C. §§ 77p(b), 78bb(f)(1), we must dismiss the action. This approach accords with the "broad construction" presumption in *Dabit*, 547 U.S. at 86, and follows the example of several of our sister circuits. *See, e.g.*, *Anderson*, 521 F.3d at 1286 (10th); *Rowinski*, 398 F.3d at 300 (3d); *Miller*, 391 F.3d at 702 (5th); *Dudek*, 295 F.3d at 879–80 (8th). We also note that Segal may yet bring his individual claims against Fifth Third in state court, as the district court dismissed those claims without prejudice.

III.

For these reasons, we affirm.