*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0018p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JERRY L. DEMINGS, Sheriff of Orange
County, Florida, in his official capacity,
individually, and on behalf of all others
similarly situated,

               *Plaintiff-Appellant,*

    *v.*

NATIONWIDE LIFE INSURANCE CO.,
NATIONWIDE RETIREMENT SOLUTIONS, INC.,
and NATIONWIDE FINANCIAL SERVICES, INC.,
               *Defendants-Appellees.*

No. 08-4476

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 06-00967—Edmund A. Sargus, Jr., District Judge.

Argued: October 13, 2009

Decided and Filed: February 3, 2010

Before: O'CONNOR, Associate Justice (Ret.);[*] GILMAN and GIBBONS, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** Roger L. Mandel, BECKHAM & MANDEL, Dallas, Texas, for Appellant.
Charles C. Platt, WILMER HALE, New York, New York, for Appellees. **ON BRIEF:**
Roger L. Mandel, BECKHAM & MANDEL, Dallas, Texas, Allen C. Engerman, LAW
OFFICES OF ALLEN C. ENGERMAN, PA, Boca Raton, Florida, Jeffrey C. Engerman,
LAW OFFICES OF JEFFREY C. ENGERMAN, PC, Los Angeles, California, for
Appellant. Charles C. Platt, WILMER HALE, New York, New York, Daniel H. Squire,
Mark L. Bieter, Heath A. Brooks, WILMER HALE, Washington, D.C., Quintin F.
Lindsmith, Vladimir P. Belo, BRICKER & ECKLER LLP, Columbus, Ohio, for
Appellees.

---

[*]The Honorable Sandra Day O'Connor, Associate Justice (Ret.) of the Supreme Court of the
United States, sitting by designation.

——————————

## OPINION

——————————

SANDRA DAY O'CONNOR, Associate Justice (Retired).   The Securities Litigation Uniform Standards Act of 1998 (SLUSA), Pub. L. No. 105-353, 112 Stat. 3227, "provides that private state-law 'covered' class actions alleging untruth or manipulation in connection with the purchase or sale of a 'covered' security may not 'be maintained in any State or Federal court.'" *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 636–37 (2006) (citing 15 U.S.C. § 77p(b)).   In this case, the district court dismissed Jerry L. Demings's proposed class-action lawsuit after determining that it was precluded under SLUSA.   Demings does not now dispute that his proposed class-action suit was a covered state-law class action that would generally be precluded under SLUSA's terms.   Instead, he argues that his suit fits within the "state actions" exception to SLUSA preclusion.   15 U.S.C. § 77p(d)(2)(A).   We agree with the district court and find that the proposed class action does not fit within the narrow state-actions exception to SLUSA preclusion.   We therefore **AFFIRM** the district court's judgment dismissing the suit.

## I.

Jerry L. Demings is the Sheriff of Orange County Florida.   In his capacity as sheriff, he sponsors a § 457 "deferred compensation plan" for his employees.   *See* 26 U.S.C. § 457(b).   Employees who participate in the plan have individually funded accounts and—through the plan's contracts with Nationwide Life Insurance Co., Nationwide Retirement Solutions, Inc., and Nationwide Financial Services, Inc. (collectively referred to as "Nationwide")—participants can invest in various mutual funds and other products selected for inclusion in the plan by Nationwide.

Demings filed a class-action lawsuit, individually and in his official capacity,[1] against Nationwide.   He brought his suit on behalf of all public employers who sponsor § 457 deferred-compensation plans, and he asserted claims for breach of fiduciary duty

————————————

[1] The suit was originally brought in the name of Kevin Beary, who was Sheriff of Orange County at the time suit was filed.   Demings has since succeeded Beary as Sheriff.

and unjust enrichment.  His claims were based on Nationwide's receipt of revenue-sharing payments from the mutual funds in which the § 457 plan invested its participants' individual funds.  Demings alleged that Nationwide implemented a scheme under which it would receive revenue-sharing payments from mutual funds and mutual fund advisors based upon a percentage of assets invested from the § 457 plans into the mutual funds.  Demings further alleged that, in selecting which mutual funds to use in the § 457 plans, Nationwide would select only those funds that engaged in such revenue sharing.  The thrust of Demings's complaint was that plan participants, not Nationwide, were entitled to any revenue-sharing payments because such profits were directly derived from the assets of plan participants.

Nationwide filed a motion to dismiss, FED. R. CIV. P. 12(b)(6), based on several grounds.  The only ground addressed by the district court, and the only one at issue here, is Nationwide's argument that the suit is precluded by SLUSA.  SLUSA provides:

> (b) Class action limitations
>
> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
>
>> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>>
>> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).

In his response to the motion to dismiss, Demings contended that SLUSA did not preclude his suit.  He acknowledged that his was a "covered class action based upon the statutory or common law of [a] State," but initially argued that his allegations did not involve "fraud" or "deception in connection with the purchase or sale of any security," as required by 15 U.S.C. § 77p(b).  *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (citation omitted).

The district court disagreed and issued an opinion and order dismissing the suit on September 17, 2007. The district court found that, although Demings did not specifically use the words "untrue statement" or "omission" in his complaint, the substance of his claim was that Nationwide misrepresented a relationship with mutual fund advisors or, at a minimum, failed to disclose material facts about the relationship. The claim therefore fell within SLUSA's preclusive effect under 15 U.S.C. § 77p(b). This initial ruling is not challenged in this appeal.

Demings then filed a motion for leave to file an amended complaint, FED. R. CIV. P. 15(a), accompanied by a motion to vacate the judgment. FED. R. CIV. P. 59(e). In his proposed amended complaint, Demings attempted to purge his complaint of any mention of misrepresentations or omissions. Also, Demings argued for the first time that his suit fit within SLUSA's "state actions" exception, which exempts certain suits brought by states, political subdivisions thereof, and state pension plans from SLUSA's preclusive effect. 15 U.S.C. § 77p(d)(2)(A).

As an initial matter, the district court found that Demings could satisfy the liberal standard for amending his complaint under Rule 15(a), even though the motion was filed after judgment had already been entered. *See* FED. R. CIV. P. 15(a)(2) ("A party may amend its pleading . . . [with] the court's leave. The Court should freely give leave when justice so requires."); *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002) ("Where a timely motion to amend judgment is filed under Rule 59(e), the Rule 15 and Rule 59 inquiries turn on the same factors."). Nonetheless, it concluded that any amendment would be futile because the amended complaint would not survive a motion to dismiss for the same reasons given in the court's initial September 17, 2007, opinion. That is, despite Demings's efforts to remove any reference to false statements or misrepresentations, the gravamen of the amended complaint remained identical to the initial complaint and was still based on an implicit false statement or omission of material fact. The court further ruled that the state-actions exception did not apply to save the suit. In a single sentence, it dismissed this new argument by concluding that, based on the face of the proposed amended complaint, the action was not brought by a

state, a political subdivision, or a state pension plan, as required under 15 U.S.C. § 77p(d)(2)(A).

Demings now brings this appeal.

**II.**

Demings raises only one argument on appeal: that his suit fits within the state-actions exception to SLUSA preclusion, and the district court therefore erred when it denied as futile his motion to amend his complaint. This court conducts a de novo review of the district court's judgment where, as here, the reason for the district court's denial of a motion to amend is that the amended pleading would not withstand a motion to dismiss. *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004). Before addressing the merits of Demings's argument, we first provide some background on SLUSA and how the state-actions exception fits within the statute's structure.

"SLUSA was not enacted in a vacuum." *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 308 (6th Cir. 2009). It followed Congress's 1995 enactment of the Private Securities Litigation Reform Act (PSLRA), Pub. L. No. 104-67, 109 Stat. 737, which was "targeted at perceived abuses of the class-action vehicle in litigation involving nationally traded securities." *Dabit*, 547 U.S. at 81. In enacting PSLRA, Congress was primarily concerned with "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and 'manipulation by class action lawyers of the clients whom they purportedly represent.'" *Ibid.* (quoting H.R. Conf. Rep. No. 104-369, at 31 (1995)). In order to rein in vexatious class-action suits affecting national securities markets, PSLRA erected a host of procedural and substantive hurdles intended to curb such suits. *Id.* at 81–82.

But PSLRA had unforeseen consequences. Rather than attempting to clear the new federal hurdles to securities litigation, Congress found that "plaintiffs and their representatives began bringing class actions under state law, often in state court," thus subverting the purpose of PSLRA. *Id.* at 82. Congress responded in 1998 by enacting SLUSA, which was intended to "prevent certain State private securities class action

lawsuits alleging fraud from being used to frustrate the objectives of" PSLRA. *Ibid.* (citing SLUSA § 2(5), 112 Stat. 3227). SLUSA precludes most securities fraud class-action suits brought under state law. While it precludes certain "covered class actions," it does not preclude any state-law cause of action outright; it merely removes the class-action mechanism as a means of vindicating certain state-law claims. *Id.* at 87 (SLUSA "does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist"); *cf. Kircher*, 547 U.S. at 636 n.1 ("The preclusion provision is often called a preemption provision; the Act, however, does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device in federal as well as state court.").

SLUSA generally precludes, in both state and federal court, state-law based "'covered' class actions alleging untruth or manipulation in connection with the purchase or sale of a 'covered' security." *Kircher*, 547 U.S. at 636–37 (citing 15 U.S.C. § 77p(b)). But this preclusion provision is subject to several limitations. First, it is limited to suits involving 50 or more people or entities. *See* 15 U.S.C. § 77p(f)(2). Additionally, SLUSA contains several savings clauses that act to preserve certain types of state-law claims that would otherwise be precluded under the Act's general provisions. *See* 15 U.S.C. § 77p(d)(1)–(3), (f)(2)(b). At issue in this case is the state-actions exception to SLUSA preclusion. 15 U.S.C. § 77p(d)(2).

The state-actions exception provides:

> Notwithstanding any other provision of this section, nothing in this section may be construed to preclude a State or political subdivision thereof or a State pension plan from bringing an action involving a covered security on its own behalf, or as a member of a class comprised solely of other States, political subdivisions, or State pension plans that are named plaintiffs, and that have authorized participation, in such action.

15 U.S.C. § 77p(d)(2)(A). Although Demings does not dispute on appeal that his is a "covered class action" precluded under SLUSA's general terms, he argues that his suit falls within this state-actions savings clause. We disagree. Demings's suit does not fit within the terms of this exception for two distinct reasons.

A. *Sheriff Demings is not a state, political subdivision thereof, or a state pension plan bringing a suit on its own behalf.*

In interpreting the state-actions exception in SLUSA, we begin by looking to the plain language of the provision. *See United States v. Turner,* 465 F.3d 667, 671 (6th Cir. 2006). "If the language of the statute is clear, then the inquiry is complete, and the court should look no further." *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.,* 474 F.3d 365, 371 (6th Cir. 2007). Like the district court, we look to the language of the proposed amended complaint to determine whether this suit is brought by a state, political subdivision, or state pension plan on its own behalf.

We note at the outset that we share the district court's concern that the plain language of this statutory exemption does not seem to encompass a county sheriff. A sheriff is certainly not a state or a state pension plan. The only possible basis for applying the exception is if a sheriff is considered to be a "political subdivision" of a state. Demings argues that by bringing the suit in his official capacity as a county sheriff, he constituted a "political subdivision" of the State of Florida. While it may strain the language to refer to a sheriff as a political subdivision of a state, as opposed to an officer of a political subdivision, it does not clearly fall outside of the definition. *See* BLACK'S LAW DICTIONARY 1197 (8th ed. 2004) (defining "political subdivision" as "A division of a state that exists primarily to discharge some function of local government"). Nationwide points out that a sheriff is not a "political subdivision" under the Florida Constitution, which only includes "counties" within the definition of "political subdivisions." FLA. CONST. art. VIII § 1(a). Meanwhile, a separate clause of the Florida Constitution lists sheriffs merely as "County officers." FLA. CONST. art. VIII § 1(d). We do not have the benefit of clear congressional guidance on this issue because it did not offer any definition of what qualifies as a "political subdivision" in SLUSA.

We need not speculate on the more general topic of what qualifies as a political subdivision under SLUSA's state-actions exception, though, because in any event Demings did not bring this lawsuit as a political subdivision "on its own behalf." 15 U.S.C. § 77p(d)(2)(A). The proposed amended complaint clearly states that Demings sought to bring his suit "on behalf of the Plan." He reiterates this stance before this

court. Br. for Appellant at 20 ("The Sheriff falls within this [state-actions] exemption because his office constitutes a political subdivision of the State of Florida and he brings this suit on behalf of his office's § 457(b) plan."). Under the terms of the state-actions exception, the only entity that can bring suit on behalf of a state pension plan is the plan itself. 15 U.S.C. § 77p(d)(2)(A) ("Notwithstanding any other provision of this section, nothing in this section may be construed to preclude . . . a State pension plan from bringing an action . . . on its own behalf . . . ."). The terms of the exception do not permit third-party suits on behalf of a plan, and we are given no reason to think that Congress meant to extend the exception to include such actions, contrary to the Act's plain terms. This conclusion is bolstered by the fact that Congress meant SLUSA's preclusive effect to be broad and far reaching, which counsels in favor of interpreting exceptions to SLUSA preclusion as having a limited reach. *See Dabit*, 547 U.S. at 86 (a narrow interpretation of SLUSA's preclusive effect "would undercut the effectiveness of the [PSLRA], and thus run contrary to SLUSA's stated purpose").

Demings criticizes this interpretation of the state-actions exception as exalting form over substance and requiring a plaintiff to use "magic words" in a complaint's caption. But this is not a mere formalistic demand. Demings did not allege in either his complaint or amended complaint that he has the authority to bring suit as the plan simply because he is plan sponsor. Instead, he argues only that Nationwide and the district court improperly assumed that he had no such authority. That is, he suggests that the district court was required to first assume that he meant to bring suit as the plan, then further assume that Demings had the authority to bring such a suit, and then (as he only now argues on appeal) grant leave to amend so that he could file his suit under the plan's name. But it is not incumbent upon a district court to craft a litigant's complaint, especially when it is dealing with sophisticated parties. *See Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1042 (6th Cir. 1991) ("[A] district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought.").

This is particularly true in the post-judgment context. Demings is in a weak position to complain about the district court's failure to take an active role in helping

him craft his complaint because he did not raise the argument that his suit fit within SLUSA's state-actions exception until after judgment was rendered against him. Had he made this argument in a more timely fashion, rather than waiting until the twenty-fifth hour to raise it, the deficiencies in his complaint might have been realized at a point where he had an opportunity to correct them (if a simple clerical correction was possible). Although the motion-to-amend standard in Rule 15 "plainly embodies a liberal amendment policy, in the post-judgment context, we must also take into consideration the competing interest of protecting the 'finality of judgments and the expeditious termination of litigation.'" *Morse*, 290 F.3d at 800 (quoting *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991)).

The district court correctly held that Demings's suit, on its face, was not brought by a state, political subdivision thereof, or state pension plan on its own behalf. It was not required to consider all possible ways in which a properly crafted complaint might have survived a motion to dismiss, especially at a post-judgment stage of the proceedings.

> B. *The suit was not brought on behalf of a class comprised solely of other states, political subdivisions, or state pension plans that were named plaintiffs, and that had authorized participation, in such action.*

A second infirmity brings Demings's suit outside the reach of the state-actions exception as well: he did not bring the suit "as a member of a class comprised solely of other states, political subdivisions, or state pension plans *that are named plaintiffs, and that have authorized participation, in such action.*" 15 U.S.C. § 77p(d)(2)(A) (emphasis added). Demings was not a member of a class of named plaintiffs that had authorized a suit; instead, he attempted to file a class-action suit on behalf of a prospective class made up of all others "similarly situated" as sponsors of § 457 plans. This brings the suit outside of the plain language of the state-actions exception.

Demings responds that strictly limiting the state-actions exception to suits involving named plaintiffs creates a paradox. He relies on Rule 23 to suggest that there is no such thing as a "class of named plaintiffs," because a class by its very nature involves prospective members. FED. R. CIV. P. 23. This suggested paradox is

imaginary. SLUSA's definition of "covered class actions" is not limited to the type of representative class actions described in Rule 23; it includes any suit involving 50 or more parties. 15 U.S.C. § 77p(f)(2)(A). Thus, there is nothing paradoxical about a savings clause that applies only when each of the 50 or more parties are named. SLUSA's definition of "covered class action" defines a "class" broadly to preclude multi-party actions generally; the definition includes a single lawsuit on behalf of 50 or more persons (more commonly referred to as a "mass action"), and any group of consolidated or joined lawsuits on behalf of 50 or more persons. *Ibid.* Congress purposefully adopted this broad definition of class actions so as to avoid evasion of SLUSA's preclusive effects through mass actions. *See* S. Rep. No. 105–182, at 7 (May 4, 1998) (definition of "class" under 15 U.S.C. § 77p(f)(2)(A)(ii) "is intended to prevent evasion of the bill through the use of so-called 'mass actions.'").

Whether the lawsuit was initially brought by 50 named plaintiffs, or 50 individual suits were joined together, it still qualifies as a "covered class action" under SLUSA's grouping provision, codified at 15 U.S.C. § 77p(f)(2)(A)(ii). The effect of the state-actions exception (as its plain language indicates) is to bring only those suits that are brought on behalf of 50 or more states, political subdivisions, or state pension plans that are named plaintiffs outside of SLUSA's otherwise broad preclusive reach under this grouping provision.

The history of the state-actions exception strongly supports this narrow interpretation. The exception did not appear in either the original House or Senate version of SLUSA's predecessor bills. *See* H.R. 1689, 105th Cong. (1998); S. 1260, 105th Cong. (1998). The exception was only added to the Senate version of the bill as a last-minute floor amendment by Senator Paul Sarbanes in response to state governmental authorities that were generally concerned about their rights to bring suits on their own behalf. *See* Amendment No. 2397 to S. 1260, 105th Cong. (May 13, 1998), *reprinted in* 144 CONG. REC. S4778–03; *see also* David M. Levine & Adam C. Pritchard, *The Securities Litigation Uniform Standards Act of 1998: The Sun Sets On California's Blue Sky Laws*, 54 BUS. LAW. 1, 30 (1998). Importantly, the Senate version of the state-

actions exception was not originally limited to classes of named plaintiffs; it applied more generally to exempt any action brought "as a member of a class comprised solely of other States, political subdivisions, or State pension plans *similarly situated*." S. 1260, 105th Cong. § 16(f) (May 13, 1998), *reprinted in* 144 CONG. REC. S4778–03 (emphasis added).

This broad version of the state-actions exception was the target of harsh attacks during subsequent House hearings. *See, e.g.*, Testimony of Robert C. Hinckley, *Hearing on H.R. 1689 Before Subcomm. on Finance and Hazardous Materials of the House Comm. on Commerce*, 105th Cong. 59 (May 19, 1998) (the exception "creates a new opportunity for entrepreneurial plaintiffs lawyers to circumvent the federal Reform Act and create a whole new line of business . . . . [L]awyers will have the incentive to find a single such pension fund to serve as a 'client' class representative and then bring suit on behalf of all similarly situated local pension funds.").

In response to these concerns, the state-actions exception was limited in the House version of the bill so that it would exempt only classes of named plaintiffs that specifically authorized participation in the underlying suit. *See* H.R. 1689, 105th Cong. § 16(d)(2) (July 21, 1998), *reprinted in* 144 CONG. REC. H6052–03 (providing that class members must appear as "named plaintiffs" and must "have authorized participation, in such action"); *see also* Richard W. Painter, *Responding to a False Alarm: Federal Preemption of State Securities Fraud Causes of Action*, 84 CORNELL L. REV. 1, 2 n.3 (1998) (recounting this discrepancy between the House and Senate bills). This "named plaintiff" requirement was added to prevent "the provision from serving as a loophole through which abusive suits could be brought on behalf of pension funds and municipalities that have no interest in bringing suit, simply in order to extort a large settlement out the defendant." H.R. Rep. No. 105–640, *available at* 1998 WL 414917 at *16 (July 21, 1998). It was, of course, the House's narrower version of the state-actions exception that was eventually enacted as part of SLUSA. *See* 15 U.S.C. § 77p(d)(2)(A).

This history confirms what the plain language of the exception explicitly conveys: that the exception applies only when there is a class of named plaintiffs who have authorized participation in the action. While this interpretation of the state-actions exception is admittedly quite narrow, such a reading is warranted. The state-actions exception was a narrow (and contentious) savings provision. As commentators correctly predicted when SLUSA was passed, "[i]n practice, the amendment is unlikely to be invoked with any frequency." *See* Levine & Pritchard, *supra*, 54 BUS. LAW. at 30.

We decline Demings's invitation to read an "opt-in" class mechanism into the otherwise clear language of the state-actions exception. Demings argues that courts have treated provisions similar to the state-actions exception as creating opt-in mechanisms for class litigation. Specifically, he points to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(b), which have been read by courts as including an opt-in mechanism rather than requiring that each party be a named plaintiff. The difficulty with this argument is that the statutory provisions in the FLSA and the ADEA are quite different from the state-actions exception. The pertinent language in those Acts provides: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b); 29 U.S.C. § 626(b) (incorporating the FLSA procedures by reference).

Unlike the state-actions exception, the language in the FLSA and the ADEA specifically envisions additional parties filing consent to join a suit after a complaint has been filed. That contrasts with the SLUSA exception, which refers to "bringing an action . . . as a member of a class . . . [of] named plaintiffs." 15 U.S.C. § 77p(d)(2)(A). We are familiar with only one other court to have considered this argument, and we agree with its conclusion: "While the FLSA allows for a party to file their consent in the court where the action is brought, its opt-in provision does not indicate the timing of the consent. By contrast, the SLUSA language indicates that the State entity must have 'authorized' its participation at the time the action is brought." *See City of Chattanooga*

*v. Hartford Life Ins. Co.*, No. 09-cv-516, 2009 WL 5184706, at \*4 (D. Conn. Dec. 22, 2009).

We conclude that Demings's lawsuit does not fit within the state-actions exception because it is not brought on behalf of named plaintiffs who have authorized participation in the action.

## III.

We **AFFIRM** the judgment of the district court.