Holly HANSON, an individual, and John Rennel, an individual, on behalf of themselves and others similarly situated, Plaintiffs,

v.

MORGAN STANLEY SMITH BARNEY, LLC, a Delaware limited liability company; Does 1–50, inclusive, Defendants.

No. CV 10–06945 SJO (RCx).

United States District Court, C.D. California.

Jan. 18, 2011.

Alyson Claire Decker, Maxwell M. Blecher, Blecher and Collins P.C., Los Angeles, CA, James R. Noblin, Nicole D. Reynolds, Robert S. Green, Green Welling PC, San Francisco, CA, Robert D. Blasier, Jr., Robert J. Blasier Jr., Law Offices, El Dorado Hills, CA, for Plaintiffs.

Kenneth P. Herzinger, Orrick, Herrington & Sutcliffe LLP, San Francisco, CA, Jessica R. Perry, Lynne Charlotte Hermle, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA, Sara E. Dionne, Trish M. Higgins, Orrick Herrington & Sutcliffe LLP, Sacramento, CA, for Defendants.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

[Docket No. 15]

S. JAMES OTERO, District Judge.

This matter is before the Court on Defendant Morgan Stanley Smith Barney LLC's ("Defendant") Motion to Dismiss Plaintiffs Holly Hanson and John Rennell's (collectively, "Plaintiffs") Complaint ("Motion"). (Docket No. 15.) Plaintiffs filed an Opposition on October 21, 2010 ("Opposition") and the Defendant proffered a Reply on November 5, 2010 ("Reply"). (Docket Nos. 21, 31.) The Court found this matter suitable for disposition without oral argument and vacated the hearing set for November 22, 2010. *See* Fed.R.Civ.P. 78(b). For the following reasons, Defendant's Motion is **GRANTED**.

**I.** *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiffs are employed as financial consultants and portfolio managers by Defendant in the State of California. (Compl. ¶¶ 2, 3.) Defendant is a limited liability company formed under the laws of the State of Delaware with its headquarters in New York, New York. (*Id.* ¶ 4.) Defendant provides brokerage and financial advisory services to customers; it buys and sells various equity and debt instruments. (*Id.*) Defendant has an announced and written policy generally requiring that its employees and their immediate family members maintain their personal accounts with Defendant. (*Id.* ¶ 6.) Defendant contends that its policy is required because Defendant must meet supervisory requirements established by the National Association of Securities Dealers ("NASD"), New York Stock Exchange ("NYSE"), and Financial Industries Regulatory Authority ("FINRA"). (*See id.* ¶ 9.) Plaintiffs argue that "no third party or governmental agency" requires Defendant to restrict its employees and their immediate family members to deal exclusively with Defendant in conducting securities trading. (*Id.*) Rather, the policy is purportedly in place to overcharge Plaintiffs for their respective trades and transactions. (*Id.* ¶ 28.) Plaintiffs also allege that Defendant imposes

improper charges for "postage and handling" because almost all employees of Defendant receive electronic communication and Defendant does not actually incur any postage or handling expense. (*Id.* ¶ 8.)

On August 20, 2010, Plaintiffs, on behalf of themselves and others similarly situated, filed a Complaint against Defendant in state court. (*See generally* Compl.) Plaintiffs alleged that Defendant's policy requiring Plaintiffs to maintain their personal accounts with Defendant violates § 450(a) of the California Labor Code.[1] (*Id.* ¶ 11.) Plaintiffs brought a cause of action pursuant to § 17200 of the California Business and Professions Code (commonly known as the Unfair Competition Law ("UCL")) because Defendant's policy supposedly constitutes an unlawful, unfair and/or fraudulent business act. (*Id.* ¶¶ 24, 26.) Defendants removed the matter to federal court on September 17, 2010. (Docket No. 1.)

## II. *DISCUSSION*

■ Defendant asserts that Plaintiffs' sole cause of action is precluded[2] by the Securities Litigation Uniform Standard Act of 1998 ("SLUSA"), Pub. L. No. 105–353, 112 Stat. 3227 (1998). (*See generally* Def.'s Mot.)

### A. *The Securities Litigation Uniform Standards Act*

Congress passed the Private Securities Litigation Reform Act of 1995 ("Reform Act"), Pub. L. No. 104–67, 109 Stat 737 (1995), to curb perceived meritless and abusive private securities lawsuits. H.R. Rep. No. 104–369, at 31–32 (1995) (Conf. Rep.). Among other provisions, the Reform Act limited recoverable damages and attorney fees, imposed restrictions on the selection of lead plaintiffs, and imposed heightened pleading requirements in actions brought pursuant to § 10(b) of the Security Exchange Act and Security Exchange Commission Rule 10b–5. *See* 15 U.S.C. § 78u–4; *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 345–46, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). The Reform Act led class action attorneys to avoid federal courts, and instead, bring lawsuits under state law in state courts. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 547 U.S. 71, 82, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006). In response, Congress enacted SLUSA "to prevent State private securities action lawsuits ... from being used to frustrate the objectives of the [Reform Act]...." SLUSA § 2(5).

■ SLUSA provides that:

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—

> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection

---

1. Section 450(a) of the California Labor Code provides that "[n]o employer ... may compel or coerce any employee, or applicant for employment, to patronize his or her employer, or any other person, in the purchase of any thing of value." CAL. LABOR CODE § 450(a).

2. The Supreme Court recently provided clarification that SLUSA precludes state law claims, rather than preempts them. *See*

*Kircher v. Putnam Funds Trust,* 547 U.S. 633, 636 n. 1, 126 S.Ct. 2145, 165 L.Ed.2d 92 (2006) ("The preclusion provision is often called a preemption provision; the Act, however, does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device in federal as well as state court.") (citation omitted).

with the purchase or sale of a covered security.

15 U.S.C. § 77p(b). Therefore, SLUSA authorizes the removal and subsequent dismissal of: "(1) a 'covered class action' (2) 'based upon the statutory or common law' of any state (3) being maintained by 'any private party,' and if the action alleges (4) either 'an untrue statement or omission of material fact' or 'that the defendant used or employed any manipulative or deceptive device or contrivance' (5) 'in connection with the purchase or sale' (6) of a 'covered security.'" *Madden v. Cowen & Co.*, 576 F.3d 957, 965 (9th Cir.2009) (citing 15 U.S.C. § 77p(b)); *see also Proctor v. Vishay Intertechnology, Inc.*, 584 F.3d 1208, 1221–22 (9th Cir.2009); *Gibson v. PS Grp. Holdings, Inc.*, No. 00–CV–372, 2000 WL 777818, at *3 (S.D. Cal. June 14, 2000).

**B.** *SLUSA Precludes Plaintiffs' UCL Claim and Requires the Court to Dismiss the Complaint.*

Plaintiffs do not contest that the transactions and trades done by Defendant fall under the definition of a "covered security." (*See generally* Compl.) Nor do the Plaintiffs contest that the action is a "covered class action" and based on state law. (*See generally id.*) Instead, Plaintiffs assert that they have not alleged that Defendant engaged in any fraud, misrepresentation or use of deceptive device. (Pls.' Opp'n 4:19–7:9.) Plaintiffs also allege that, even if the Court were to find allegations of misrepresentations or use of deceptive devices, those alleged acts were not "in connection" with the purchase or sale of a security. (*Id.* at 7:10–8:12.)

**1.** *Plaintiffs Alleged Defendant Misrepresented Its Postage and Handling Fees and Its Obligations Under FINRA, NYSE, and NASD's Requirements.*

Congress passed SLUSA in order "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the 1995 [Reform] Act." *Dabit*, 547 U.S. at 86, 126 S.Ct. 1503 (citing SLUSA § 2(5), 112 Stat. 3227); *see also Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 (2d Cir.2003) (describing SLUSA as an attempt "to close" the "federal flight" loophole), *abrogated on other grounds as recognized by Romano v. Kazacos*, 609 F.3d 512, 519 n. 2 (2d Cir.2010). Therefore, a court "must focus ... on the substance of the allegations and be wary of efforts to circumvent SLUSA through artful pleading." *Stoody–Broser v. Bank of Am., N.A.*, No. C 08–02705, 2009 WL 2707393, at *3 (N.D.Cal. Aug. 25, 2009) (citations omitted). Where plaintiffs attempt to conceal claims based on misrepresentations, omissions, or the use of manipulative and deceptive devices in connection with the sale of securities, courts disregard state law labels and dismiss the class claims as precluded by SLUSA. *See, e.g., Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 311(6th Cir.2009) ("The question under SLUSA is not whether the complaint uses the prohibited words ... It is whether the complaint covers the prohibited theories, no matter what words are used (or disclaimed) in explaining them.") (citations omitted); *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1286 (10th Cir.2008) ("[A]s long as claims meet all of the elements of SLUSA, courts have generally held that SLUSA precludes those claims-regardless of how artfully or cleverly plaintiffs attempt to plead them.") (citations omitted).

The Court finds *Appert v. Morgan Stanley Dean Witter, Inc. (Appert II)*, No. 08–CV–7130, 2010 WL 5186765, *4 (N.D.Ill. Dec. 9, 2010), apposite and germane to the case at hand. In *Appert*, the plaintiff brought a class action against the defendant for a breach of contract because the defendant allegedly charged "Order Handling" fees without regard to actual ex-

penses incurred in delivering confirmation slips in securities transactions. *See id.* at *1. Upon the defendant's filing of a motion to dismiss based on SLUSA preclusion, the plaintiff argued that the breach of contract claim was not based on any allegation of misrepresentation, omission, or use of manipulative or deceptive devices. *Id.* at *4. The *Appert* district court rejected the plaintiff's argument and held that plaintiff's allegation of "disguising profits as processing fees" was indeed an allegation of misrepresentation or the use of a manipulative or deceptive device. *Id.* The court granted the motion to dismiss because the claims were precluded by SLUSA. *Id.* at *4–*5.

■ Here, Plaintiffs are alleging precisely the same claim as the plaintiff in *Appert,* 2010 WL 5186765, *4. Plaintiffs allege that Defendant misrepresented charges for "postage and handling" because almost all employees of Defendant receive electronic communication and Defendant does not incur any postage or handling expense. (Compl. ¶¶ 8, 28.) As in *Appert,* Defendant is alleged to have "disguis[ed] profits as processing fees." *See Appert,* 2010 WL 5186765, at *4. Contrary to Plaintiffs assertion, it makes no difference that the words misrepresentation, manipulation, or deception were not expressly used in the Complaint. (Pls.' Opp'n 5:8–10.) SLUSA's "[preclusive] force cannot be circumvented by [such] artful drafting." *U.S. Mortg., Inc. v. Saxton,* 494 F.3d 833, 842 (9th Cir.2007) (citing *Rowinski v. Salomon Smith Barney Inc.,* 398 F.3d 294, 304 (3rd Cir.2005)), *overruled as to other holdings by Proctor,* 584 F.3d at 1208; *accord Davis v. John Hancock Viable Life Ins. Co.,* 295 Fed.Appx. 245, 247 (9th Cir.2008) (unpublished).

Plaintiff's sole cause of action is grounded in part by the factual allegation that Defendant misrepresented its postage and handling fees; this alone would persuade the Court to find Plaintiffs' claim falls within the ambit of SLUSA. Plaintiffs, however, provide further allegations of misrepresentations and use of manipulation and deception. Plaintiffs allege that Defendant misrepresented its obligations under FINRA, NYSE, and NASD's requirements. (Compl. ¶ 9.) Again, Plaintiffs do not use the term "misrepresentation" but that is precisely what Defendant is being accused of doing. Defendant stated that it is obligated to compel its employees and their immediate family members to deal exclusively with it to conduct trades. (*Id.*) Plaintiffs assert that this statement is false. (*Id.* ¶¶ 9, 28.) Even if this were not an allegation of misrepresentation—which it is—the alleged scheme to increase Defendant's profits by mandating its employees to make their trades exclusively with Defendant would undoubtedly be manipulative and deceptive.

■ Plaintiffs argue that, even if the factual allegations made are misrepresentations, they "are completely immaterial as they do not alter the fact that Defendant's employees were coerced into using Defendant's services as a condition of their employment." (Pls.' Opp'n 5:17–20.) Plaintiffs attempt to portray their cause of action and the misrepresentations as "not . . . concerning the securities Plaintiffs bought." (*Id.* at 4:8–9.) Plaintiffs immaterial argument, however, runs squarely against case law adopted by an overwhelming number of Circuits. *See, e.g., Rowinski,* 398 F.3d at 300 ("[P]reemption does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another."); *Miller v. Nationwide Life Ins. Co.,* 391 F.3d 698, 701–02 (5th Cir.2004) ("[T]he only question before us is whether Miller's breach of contract claim alleged . . . untrue statements . . .

Miller's complaint clearly does include such allegations ... We thus conclude that Miller's state law claim falls within the prohibition of [SLUSA]."); *Prof'l Mgmt. Assocs., Inc. Employees' Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800, 803 (8th Cir.2003) (holding that a negligence claim was precluded by SLUSA because the "misrepresentations and omission [were] incorporated by reference in the negligence count"). SLUSA "does not ask whether the complaint makes 'material' or 'dependent' allegations of misrepresentation in connection with buying or selling securities. It asks whether the complaint includes these types of allegations, pure and simple." *Segal*, 581 F.3d at 311. Indeed, the Ninth Circuit has held that "[m]isrepresentation need not be a specific element of the claim to fall within [SLUSA]'s preclusion." *Proctor*, 584 F.3d at 1222 n. 13. Thus, irrespective of whether the misrepresentations are necessary to prove Plaintiff's UCL claim, they have been incorporated by reference into Plaintiff's UCL claim, and thus, require that the claim to be precluded by SLUSA.

Accordingly, the Court finds that Plaintiffs allege that Defendant made misrepresentations and used manipulative or deceptive devices under their UCL claim.

2. *The Alleged Misrepresentations Were in Connection with the Purchase or Sale of Securities.*

■ Plaintiffs posit that Defendant's Motion to Dismiss should fail because the misrepresentations or deceptive devices were not "in connection" with the purchase or sale of securities. (Pls.' Opp'n 7:13–23.) The Court disagrees.

The Supreme Court in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. at 85–86, 126 S.Ct. 1503, held that the phrase "in connection with the purchase or sale" of securities must be given "broad interpretation." The Supreme Court rejected a narrow construction and held that

"it is enough that the fraud alleged 'coincide' with a securities transaction-whether by the plaintiff or by someone else." *Id.* at 85, 126 S.Ct. 1503. The phrase "in connection with" does not mean that a plaintiff "was defrauded into purchasing or selling a particular securities ..." by the alleged misrepresentations. *Id.; see also Appert v. Morgan Stanley Dean Witter, Inc. (Appert I)*, No. 08–CV–7130, 2009 WL 3764120, *6 (N.D.Ill. Nov. 6, 2009) ("[I]t [is] not necessary for the fraud to relate to a misrepresentation about the value of a security ... [I]t [is] sufficient that the fraudulent acts 'coincide with' the sale of securities.") (citing *SEC v. Zandford*, 535 U.S. 813, 819–22, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002)). The Ninth Circuit similarly held that "in connection with" means "a relationship in which the fraud and the stock sale coincide or are more than tangentially related." *Madden*, 576 F.3d at 966 (citing *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1131 (9th Cir.2002), *abrogated on other grounds as recognized by Proctor*, 584 F.3d 1208). To hold otherwise "would undercut the effectiveness of the 1995 Reform Act and thus run contrary to SLUSA's stated purpose...." *Dabit*, 547 U.S. at 86, 126 S.Ct. 1503.

There is no doubt that the alleged misrepresentations regarding Defendant's postage and handling fees and its obligations under FINRA, NYSE, and NASD "coincide" with the purchase of securities. It is irrelevant whether "Defendant's policies, or false justifications for these policies, affected [Plaintiffs'] decision to purchase or sell any particular securities." (Pls.' Opp'n 8:13–15.) It is enough that the alleged misrepresentations coincide with a sale or purchase of a security. *See Dabit*, 547 U.S. at 85, 126 S.Ct. 1503. Defendant represented to its employees and their immediate family members that obligations imposed by FINRA, NYSE, and NASD required that they purchase securi-

ties solely through Defendant. (Compl. ¶ 9.) Defendant also represented to Plaintiffs and their immediate family members that the postage and handling fees were related to expenses incurred by Defendant in the purchase and sale of their securities. (*Id.* ¶ 8.) These alleged misrepresentations are not tangential, but directly connected to the purchase and sale of securities.

Accordingly, the Court finds that Plaintiffs allegations of misrepresentations and use of manipulative and deceptive devices by Defendant are connected to the purchase and sale of securities. Therefore, pursuant to SLUSA, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' Class Action Complaint. "[E]mpathy for possibly defrauded plaintiffs does not permit [the Court] to flout the clear instruction of the United States Supreme Court." *Saxton,* 494 F.3d at 845.

### C. The Court Grants Plaintiffs Leave to Amend.

Defendant prays the Court to dismiss Plaintiffs' Complaint with prejudice because it asserts that Plaintiffs cannot save their claims through amendment. (Def.'s Mot. 12:22–14:3.)

The Ninth Circuit has held that "[a]llowing amendment of claims to avoid dismissal could allow plaintiffs to 'artfully plead' their way around federal jurisdiction and back into state court-by some accounts, precisely what SLUSA was meant to prevent." *Saxton,* 494 F.3d at 843. The Court of Appeals, however, acknowledged that "granting or denial of leave to amend is ordinarily a matter left to the discretion of the district court" and that there may be "inequity [in] dismissing otherwise valid and viable state law claims on the ground that plaintiff pled-perhaps inadvertently-a cause of action that may be construed as federal in nature." *Id.* Thus, under Ninth Circuit precedent, "SLUSA does not prohibit amendment of the com-

plaint after removal." *Id.* As such, district courts in the Ninth Circuit have granted leave to amend to plaintiffs after finding that SLUSA precluded their state law claims. *See, e.g., Simon v. Stang,* No. C 10–00262, 2010 WL 1460430, at *3 (N.D.Cal. Apr. 12, 2010) (permitting the plaintiffs to amend because a UCL claim "may be premised on conduct that is not necessarily deceptive or misleading" and because the plaintiffs could "seek only non-monetary, equitable relief, thereby avoiding preclusion …"); *Tuttle v. Sky Bell Asset Mgmt., LLC,* No. C 10–03588, 2010 WL 4807093, at *6 (N.D.Cal. Nov. 19, 2010) ("[I]f plaintiffs wish to carry on with the action they are required to file an amended complaint that pleads claims that avoid the preclusive nature of SLUSA.").

Accordingly, the Court GRANTS Plaintiffs leave to amend their Complaint. Plaintiffs should take heed that they cannot simply erase from their First Amended Complaint any mention of Defendant's handling and processing fees or Defendant's representation regarding FINRA, NYSE, and NASD's requirements; that will not prevent the preclusive nature of SLUSA. Defendant's justification for requiring its employees to purchase and sell securities solely through Defendant is inextricably tied to the alleged violation of California Labor Code § 450, the basis for Plaintiffs' UCL claim. Permitting Plaintiffs to merely delete references to Defendant's alleged misrepresentation on its FINRA, NYSE, and NASD's requirements would run afoul of Congress's intent in passing SLUSA. *See Saxton,* 494 F.3d at 843. Plaintiffs, however, may file a First Amended Complaint and proceed with this action in numerous ways. For examples, Plaintiffs may "comply with the [Reform Act]'s requirements for pleading a federal securities claim," *see Tuttle,* 2010 WL 4807093, at *6, enforce any state law cause of action as individuals or as a group

of fewer than 50 plaintiffs, *see Dabit,* 547 U.S. at 87, 126 S.Ct. 1503, or plead within several express exemptions under SLUSA, *see, e.g.,* 15 U.S.C. § 78bb(f)(3) (exempting actions based on the law of the defendant's state of incorporation or organization).

III. *RULING*

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' Class Action Complaint is **GRANTED.** The Court grants Plaintiffs leave to amend. Plaintiffs shall file their First Amended Complaint on or before February 14, 2011. Failure to do so may result in dismissal of this action for lack of prosecution and failure to comply.

IT IS SO ORDERED.