# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 16-3013

_____

Jay Zola; Jeremiah Joseph Lowney

*Plaintiffs - Appellants*

v.

TD Ameritrade, Inc.; TD Ameritrade Clearing, Inc.

*Defendants - Appellees*

_____

## No. 16-3016

_____

Tyler Verdieck, A California Citizen, Individually, And On Behalf Of All Others Similarly Situated

*Plaintiff - Appellant*

v.

TD Ameritrade, Inc., a New York Corporation

*Defendant - Appellee*

_____

## No. 16-3019

_____

Michael Sarbacker, Individually and on behalf of all others similarly situated

*Plaintiff - Appellant*

v.

TD Ameritrade Holding Corporation; TD Ameritrade, Inc.; TD Ameritrade Clearing, Inc.; Frederic J. Tomczyk; Paul Jiganti

*Defendants - Appellees*

_____

Appeals from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: December 12, 2017
Filed: May 10, 2018

_____

Before WOLLMAN, LOKEN, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Jay Zola and Jeremiah Joseph Lowney (collectively, Zola), Tyler Verdieck, and Michael Sarbacker filed separate class-action complaints against TD Ameritrade, Inc., alleging various state-law claims.[1] The complaints alleged that TD Ameritrade breached its duty of best execution when it routed client orders to buy and sell securities to trading venues that paid TD Ameritrade top dollar for its order flow. The district court[2] dismissed the complaints for failure to state a claim after concluding that the claims were precluded by the Securities Litigation Uniform Standards Act of 1998 (SLUSA). See 15 U.S.C. § 78bb(f)(1). Having reviewed the dismissal *de novo*,

---

[1]The plaintiffs also sued entities and individuals related to TD Ameritrade, Inc. We will refer to the defendants collectively as TD Ameritrade.

[2]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, adopting in relevant part the Findings and Recommendation of the Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska, now retired.

we affirm.  See Lewis v. Scottrade, Inc., 879 F.3d 850, 851 (8th Cir. 2018), *deadline for filing petition for cert. extended to May 9, 2018*, (standard of review).

## I.  Background

TD Ameritrade provides brokerage services to retail investors.  Its clients place orders to buy and sell securities with TD Ameritrade, which then directs the orders to trading venues that execute the transactions.  The plaintiffs alleged that TD Ameritrade failed to direct client orders to the trading venues that offered the "best execution" possible for the order—that is, the best price, speed of execution, and likelihood that the trade would be executed.  TD Ameritrade instead directed the orders to the trading venues that were willing to pay TD Ameritrade "kickbacks," *i.e.*, rebates or payments for order flow.

According to the plaintiffs, those trading venues catered to high-frequency traders, which use sophisticated algorithms, advanced technology, and physical proximity to stock exchange servers to quickly detect and trade on subtle market signals.  For example, Zola alleged that high-frequency traders engage in a practice called "electronic front-running," Zola Compl. ¶ 11, "meaning that they detect patterns involving large incoming trades, and then execute their own trades before those incoming trades are completed," Waggoner v. Barclays PLC, 875 F.3d 79, 86 (2d Cir. 2017), *petition for cert. filed*, 86 U.S.L.W 3455 (U.S. Feb. 26, 2018) (No. 17-1209).  This practice "results in the incoming trades being more costly or less lucrative for the individuals or institutions making them." Id. at 86-87. Similarly, Verdieck and Sarbacker alleged that TD Ameritrade directed non-marketable limit orders to Direct Edge, which then executed those orders more slowly and at a less competitive price than the orders of the high-frequency traders.[3]

---

[3]"A 'limit' order is an order to buy or sell a specific number of shares of a security at a specific or better price." Lewis, 879 F.3d at 851.  A non-marketable limit order is an order that cannot be executed immediately because no market participant

Zola and Sarbacker alleged that TD Ameritrade breached its uniform client agreement when it failed to consider certain factors in deciding where to direct client orders and instead considered only the trading venues that were willing to pay a premium for TD Ameritrade's order flow.[4] Sarbacker also alleged claims of fraud, negligent misrepresentation, violations of the Nebraska Consumer Protection Act, and aiding and abetting. Verdieck alleged that TD Ameritrade breached its fiduciary duty of best execution by directing non-marketable limit orders to Direct Edge. The three complaints involve similar factual allegations: that TD Ameritrade devised a scheme to maximize its receipt of rebates and payments at the expense of its clients by knowingly routing orders to trading venues where high-frequency traders could manipulate and exploit the slower execution of TD Ameritrade's client orders. Those trading venues paid TD Ameritrade handsomely for its order flow. According to Zola's complaint, for example, the three trading venues to which TD Ameritrade directed more than 90 percent of its orders from 2011 through 2013 paid more than $600 million for the order flow. Zola, Verdieck, and Sarbacker claim as damages those rebates or payments that TD Ameritrade received.

---

is willing to trade at the price of the order.

[4]The uniform client agreement provides, in relevant part:

[TD Ameritrade] consider[s] a wide variety of factors in determining where to direct [client] orders, such as execution price, opportunities for price improvement (which is when an order is executed at a price that is more favorable than the displayed national best bid or offer), market depth, order size and trading characteristics of the security, efficient and reliable order handling systems and market center service levels, speed, efficiency, accuracy of executions, and the cost of executing orders at a market.

## II.  Discussion

Congress passed the Private Securities Litigation Reform Act (PSLRA) in 1995 to curb "perceived abuses" of federal class-action securities litigation by imposing special requirements and obstacles on plaintiffs filing such actions.  Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 81 (2006).  Plaintiffs responded to the PSLRA by bringing "class actions under state law, often in state court," in an attempt to "avoid the federal forum altogether."  Id. at 82.  Accordingly, Congress enacted SLUSA in 1998 to close the gap in PSLRA coverage and "prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of" the PSLRA.  Id.

SLUSA requires the district court to dismiss any "covered class action" in which the plaintiff alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" or "that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1).  It is undisputed that the complaints here alleged "covered class actions" and that the transactions at issue involved "covered securities."[5]

Our recent decision in Lewis v. Scottrade, Inc., 879 F.3d 850 (8th Cir. 2018), guides our analysis in this case. In Lewis, we addressed the two issues presented in these consolidated appeals:  whether the complaints alleged (1) "a misrepresentation or omission" or "a manipulative or deceptive device or contrivance" that was (2) "in connection with the purchase or sale of a covered security."  Id. at 852.  Lewis's complaint alleged that he had placed non-directed standing limit orders through the broker Scottrade, which violated its duty of best execution by routinely routing such

---

[5]A "covered class action" is defined as a lawsuit in which damages are sought on behalf of fifty or more people; a "covered security" is defined as a security listed on a national stock exchange. 15 U.S.C. § 78bb(f)(5)(B) and (E).

orders to trading venues that paid it large rebates. Lewis pleaded only state-law claims, including breach of fiduciary duty. We concluded that SLUSA precluded the claims and affirmed the dismissal of Lewis's complaint for failure to state a claim.

### A. "Misrepresentation or Omission" Requirement

Zola and Verdieck argue that SLUSA does not preclude their claims because their complaints did not allege any "misrepresentation or omission of a material fact" or the use or employment of "any manipulative or deceptive device or contrivance." Zola argues that he has alleged a straightforward breach of contract claim: TD Ameritrade's uniform client agreement states that it would consider certain factors in directing orders, and it did not consider those factors. Similarly, Verdieck contends that he alleged only that TD Ameritrade breached its duty to execute trades on terms most favorable to its clients, which he claims constitutes misconduct that "require[d] TD Ameritrade to act, and neither disclosures nor omissions ha[d] any impact on TD Ameritrade's obligation to fulfill its duties." Verdieck's Br. 21 (emphasis omitted).

To determine whether a plaintiff has alleged a misrepresentation or omission of a material fact, we "look at the substance of the allegations, based on a fair reading" of the complaint. Kutten v. Bank of Am., N.A., 530 F.3d 669, 670 (8th Cir. 2008). What matters is "the conduct alleged, not the words used to describe the conduct." Id. at 671; see Segal v. Fifth Third Bank, N.A., 581 F.3d 305, 311 (6th Cir. 2009) ("It is whether the complaint covers the prohibited theories, no matter what words are used (or disclaimed) in explaining them."). "SLUSA applies if the gravamen of a state law claim 'involves an untrue statement or substantive omission of a material fact in connection with the purchase or sale of a covered security.'" Lewis, 879 F.3d at 854 (quoting Dudek v. Prudential Secs., Inc., 295 F.3d 875, 879 (8th Cir. 2002)). Moreover, Lewis instructs that a plaintiff has alleged a misrepresentation or omission when "the core of [the plaintiff's] complaint is that [the broker] did not disclose its

practice of not obtaining best execution, permitting it to acquire and retain trading venue rebates contrary to its customers' interests." Id.

Although they carefully avoided allegations that explicitly sounded in fraud (words like misrepresentation, omission, or deception are absent from their complaints), Zola's and Verdieck's claims nonetheless are grounded in TD Ameritrade's failure to disclose the fact that it was selling its order flow to the highest bidders, *i.e.*, trading venues that catered to high-frequency traders. By routing order flow to those venues, TD Ameritrade enabled high-frequency traders to manipulate the price of the securities, to the detriment of the plaintiffs. Zola's and Verdieck's complaints are not materially different from the complaint in Lewis, and we thus conclude that the gravamen of their claims involves a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security. See Fleming v. Charles Schwab Corp., 878 F.3d 1146, 1154 (9th Cir. 2017), *deadline for filing petition for cert. extended to April 30, 2018*, (holding that SLUSA precluded what might otherwise have been merely a breach of contract claim, but what in substance alleged a deceptive practice because the broker "motivated by a conflict of interest, deceived Plaintiffs into believing it would deliver best execution of their trades but knew that sending all trades to UBS would breach that duty"); Holtz v. JPMorgan Chase Bank, N.A., 846 F.3d 928, 932 (7th Cir. 2017) ("[A] broker-dealer that fails to achieve best execution for a customer by arranging a trade whose terms favor the dealer rather than the client has a securities problem, not just a state-law contract or fiduciary-duty problem.").

We reject Zola's argument that characterizing his complaint as alleging an omission of material fact could recast any breach of contract claim into a fraud claim. SLUSA does not preclude "genuine contract action[s]." Kurz v. Fidelity Mgmt. & Research Co., 556 F.3d 639, 641 (7th Cir. 2009); see, e.g., Freeman Invs., L.P. v. Pac. Life Ins. Co., 704 F.3d 1110, 1115 (9th Cir. 2013); Green v. Ameritrade, 279 F.3d 590, 598 (8th Cir. 2002) (holding that SLUSA did not preclude a breach of contract

claim alleging that the plaintiff "did not receive the type of information from Ameritrade for which he believed he had contracted and paid twenty dollars monthly"); see also Fleming, 878 F.3d at 1153 (explaining that SLUSA would not preclude "a claim that [the broker] charged Plaintiffs $10 for executing a trade, despite a contract providing for a $5 charge").

Zola's complaint does not allege a typical contract dispute. There is a disconnect between the alleged breach (TD Ameritrade's failure to consider the factors set forth in the client agreement) and the damages sought (disgorgement of profits) based on TD Ameritrade's misconduct (engaging in a secret scheme to increase its profits at the expense of its clients). Fairly read, the wrongdoing alleged in Zola's complaint is not the failure to consider certain factors in directing orders, but rather the covert placement of orders with venues that catered to high-frequency traders. We conclude that Zola has attempted to style his federal securities claim as a breach of contract claim in an effort to avoid the strictures of the PSLRA. See Holtz, 846 F.3d at 931 ("The possibility that plain vanilla contract claims can proceed under state law creates an incentive to characterize all securities claims as 'contract' suits and avoid federal preemption.").[7]

## B. The "In Connection With" Requirement

The Supreme Court interprets SLUSA's "in connection with" provision the same way it interprets the phrase "in connection with the purchase or sale of any

---

[7]Zola argues that the district court erred in denying him leave to amend his breach of contract claim. Zola did not submit a proposed amended complaint, however, nor did he explain what changes he would have made to avoid SLUSA preclusion. We fail to see how an amendment could save his claim from dismissal and thus affirm the denial of leave to amend on the grounds of futility. See Siepel v. Bank of Am., N.A., 526 F.3d 1122, 1128 (8th Cir. 2008) ("review[ing] *de novo* the underlying legal conclusion of whether the proposed amendment would have been futile").

security" of Section 10(b) of the Securities and Exchange Act of 1934. Section 10(b)'s statutory language is "construed not technically and restrictively but flexibly to effectuate its remedial purpose." S.E.C. v. Zandford, 535 U.S. 813, 819 (2002) (internal quotation marks and citation omitted). Accordingly, in Merrill Lynch, Pierce, Fenner & Smith v. Dabit, the Court explained that to meet SLUSA's "in connection with" requirement, "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." 547 U.S. at 85; see Siepel v. Bank of Am., N.A., 526 F.3d 1122, 1127 (8th Cir. 2008).

Verdieck and Sarbacker argue that the standard set forth in Dabit no longer applies in light of the Supreme Court's decision in Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058 (2014), which they contend "broke new ground illuminating the contours of the 'in connection with' requirement by doing away with the amorphous 'coincide' standard." Verdieck's Reply Br. 2; see Sarbacker's Reply Br. 2. They argue that the purchase or sale of the security must be "induced by the fraud" to meet SLUSA's "in connection with" requirement and that TD Ameritrade's misconduct did not affect their decisions to buy or sell a covered security even though the misconduct might have affected their decisions to place orders with TD Ameritrade, as opposed to some other broker.

In Chadbourne, the plaintiffs had purchased uncovered securities, but alleged that the defendants had represented that those securities were backed by covered securities. The Supreme Court thus considered whether SLUSA "extend[ed] further than misrepresentations that are material to the purchase or sale of a covered security." 134 S. Ct. at 1066. It held that SLUSA did not apply, in part, because SLUSA "expresses no concern" about the decision "to purchase or to sell an uncovered security." Id. More to the point here, the Court set forth the "coincide" standard and stated, "We do not here modify Dabit." 134 S. Ct. at 1066.

In Lewis, we thus rejected the argument that Chadbourne changed the standard set forth in Dabit. We also determined that Chadbourne did not apply in Lewis's case

because the "alleged misconduct induced customers to place limit orders for covered securities with Scottrade." Lewis, 879 F.3d at 853; see Goldberg v. Bank of Am., N.A., 846 F.3d 913, 916 (7th Cir. 2017) (per curiam) (explaining that Chadbourne "holds that [SLUSA] does not apply when the customer invests in an asset that does not consist of, or contain, covered securities"). We rejected the contention that Scottrade's misconduct did not affect Lewis's decision to buy or sell a covered security, concluding that the broker's "failure to provide best execution was material to every trade in covered securities that customer Lewis chose to have Scottrade execute." 879 F.3d at 853. "The alleged misconduct—not disclosing that it would breach the duty of best execution—produced ill-gotten revenue for Scottrade each time it executed an order to buy or sell covered securities for its duped customer." Id.

The reasoning in Lewis applies with equal force here. There is no dispute that Verdieck and Sarbacker purchased or sold "covered securities." Moreover, TD Ameritrade garnered rebates and payments whenever it routed orders to buy or sell securities for its clients. We thus conclude that Verdieck's and Sarbacker's arguments are foreclosed. See Lewis, 879 F.3d at 853-54 (concluding that "fraud or deception in trading that violates a broker's duty of best execution is misconduct 'in connection with' the purchase and sale of covered securities"); Kurz, 556 F.3d at 641 (rejecting as "frivolous" the contention that the duty of best execution is not "in connection with" the purchase or sale of securities).

The judgment is affirmed.[8]

_____

_____

[8]We grant Verdieck's motion for judicial notice of the amended complaint in Klein v. TD Ameritrade Holding Corp., No. 8:14cv396 (D. Neb.). Because we have considered Zola's and Sarbacker's complaints in deciding their appeals, we deny as moot Verdieck's motion as to those pleadings.