**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NORTHSTAR FINANCIAL ADVISORS, INC., on behalf of itself and all others similarly situated,

*Plaintiff-Appellant*,

v.

SCHWAB INVESTMENTS; MARIANN BYERWALER; DONALD F. DORWARD; WILLIAM A. HASLER; ROBERT G. HOLMES; GERALD B. SMITH; DONALD R. STEPHENS; MICHAEL W. WILSEY; CHARLES R. SCHWAB; RANDALL W. MERK; JOSEPH H. WENDER; JOHN F. COGAN; CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.,

*Defendants-Appellees*.

No. 16-15303

D.C. No.
5:08-cv-04119-LHK

OPINION

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted October 11, 2017
San Francisco, California

Filed September 14, 2018

Before:  Sidney R. Thomas, Chief Judge, and Milan D. Smith, Jr. and Kathleen M. O'Malley,[*] Circuit Judges.

Opinion by Judge O'Malley;
Partial Concurrence and Partial Dissent by
Chief Judge Thomas

---

## SUMMARY[**]

---

### Securities

The panel (1) affirmed the district court's dismissal of class claims brought under state law as precluded by the Securities Litigation Uniform Standards Act and (2) reversed the dismissal with prejudice and remanded to give plaintiff the opportunity to amend its complaint.

The panel held that SLUSA bars a plaintiff class from bringing (1) a covered class action (2) based on state law claims (3) alleging that the defendants made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security.  The central question is whether the complaint describes conduct by the defendant that would be actionable under the 1933 or 1934 Securities Acts.  The court must determine whether (1) the

---

[*] The Honorable Kathleen M. O'Malley, United States Circuit Judge for the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

complaint's description of a defendant's conduct involves conduct specified in SLUSA, and (2) the alleged conduct will be part of the proofs in support of the state cause of action. While a defendant's conduct need not be an element of the state cause of action, the conduct still must be a fact on which the proof of that state cause of action depends.

The complaint made allegations about the Schwab Total Bond Market Fund. In 1997, shareholders approved proposals requiring the Fund managers to seek to track a bond index and to invest no more than 25% of the Fund's total assets in any one industry. During the "Pre-Breach Period," the Fund's investments performed in a manner substantially consistent with the index. During the subsequent "Breach Period," the Fund deviated from its fundamental investment policies.

The panel held that the Pre-Breach class claims depended on allegations of misrepresentations or omissions and were therefore barred by SLUSA. It was this conduct to which plaintiff would point to prove its breach of contract and breach of fiduciary duty claims. The panel held that Breach class's claims similarly depended on allegations of misrepresentations and were barred by SLUSA.

The panel concluded that neither the Pre-Breach nor the Breach class claims were saved by the Delaware carve-out, which provides that class claims that would otherwise be barred by SLUSA are not subject to dismissal if (1) they are based upon the statutory or common law of the state in which the issuer of the securities is organized, and (2) they constitute "permissible actions" defined by SLUSA. The panel concluded that the claims were based on the law of Massachusetts, the state in which defendant was organized, but the claims were not "permissible actions."

The panel affirmed the district court's dismissal of all of the class claims, but it held that the district court erred in dismissing the claims with prejudice. The panel remanded to give plaintiff the opportunity to amend its complaint.

Concurring in part and dissenting in part, Chief Judge Thomas wrote that he dissented from the portion of the opinion addressing the Pre-Breach claims. He wrote that those claims fell comfortably within the category of state law claims outside the ambit of SLUSA because proving them would not require proof of a misrepresentation or omission of material fact.

## COUNSEL

Robert C. Finkel (argued), Wolf Popper LLP, New York, New York; Joseph J. Tabacco Jr. and Christopher T. Heffelfinger, Berman DeValerio, San Francisco, California; Marc J. Gross, Greenbaum Rowe Smith & Davis LLP, Roseland, New Jersey; for Plaintiff-Appellant.

Matthew L. Larrabee (argued), Joshua D.N. Hess, and Brian C. Raphel, Dechert LLP, San Francisco, California; Richard A. Schirtzer, Karin A. Kramer, and Arthur M. Roberts, Quinn Emanuel Urquhart & Sullivan LLP, San Francisco, California; for Defendants-Appellees.

# OPINION

O'MALLEY, Circuit Judge:

In this appeal, we consider whether the Securities Litigation Uniform Standards Act ("SLUSA") precludes class claims brought under state law by Northstar Financial Advisors, Inc. ("Northstar") against Schwab Investments, Charles Schwab Investment Management, Inc., and the trustees of the Schwab Trust (collectively, "defendants"). We conclude that SLUSA precludes all of Northstar's claims, and that the district court therefore correctly dismissed them. The district court erred, however, in dismissing the claims with prejudice. We therefore affirm in part, reverse in part, and remand.[1]

## I

### A

Northstar is a registered investment advisory and financial planning firm that manages accounts on behalf of investors. During the relevant time period, Northstar traded through Charles Schwab's Institutional Advisor Platform, where it purchased shares in the Schwab Total Bond Market Fund ("Fund") for its clients. The Schwab Trust ("Trust") is a Massachusetts Business Trust having assets held by a group of trustees ("Trustees") who manage and supervise the

---

[1] The Supreme Court recently addressed SLUSA in its *Cyan, Inc. v. Beaver County Employees Retirement Fund*, 138 S. Ct. 1061 (2018), decision. There, the Court held that SLUSA does not strip state courts of jurisdiction to adjudicate class actions alleging violations of the 1933 Securities Act, and does not authorize removing such actions from state to federal court. Nothing in *Cyan* is inconsistent with our conclusions here.

Fund's operations for the benefit of its shareholders, the Trust's beneficiaries. Charles Schwab Investment Management, Inc. ("Schwab Advisor"), an investment advisory firm affiliated with the Trust, has acted as the manager of, and investment advisor to, the Trust in accordance with a June 1994 Investment Advisory Agreement ("IAA"). The Schwab Advisor oversees the day-to-day operations of the Fund, including selection of investments.

Northstar's core allegations have remained the same across its five complaints. In a July 1997 Proxy Statement ("1997 Proxy Statement"), the Trustees sought a shareholder vote on two proposals relevant to this appeal. Proposal No. 2 would amend the Fund's fundamental investment objective to track the investment results of the Lehman Brothers Aggregate Bond Index ("Index"). Proposal No. 3 would change the Fund's "fundamental investment policies and investment restrictions" regarding the concentration of investments to incorporate the SEC's interpretation of "concentration" from the Investment Company Act of 1940 ("ICA"), which was and is 25% of the available assets in a fund. A majority of Fund shareholders voted to approve the proposals. As a result, the Trust was obligated to "seek to track" the Index and to invest no more than 25% of the Fund's total assets in any one industry.

From August 1997 through August 2007—which Northstar refers to as the "Pre-Breach period"—the Fund's investments performed in a manner substantially consistent with the Index. During this period, the Fund continuously offered its shares to the public pursuant to annual prospectuses, which affirmed to potential and current shareholders that the Trust was following the fundamental investment objectives set forth in the 1997 Proxy Statement.

From August 2007 until February 2009—which Northstar refers to as the "Breach period"—the Trust continued to represent in Fund prospectuses and other public filings that the Fund would be managed conservatively and passively, and would be invested in the same securities as the Index, pursuant to its fundamental investment objective. In or about September 2007, however, the Trust caused the Fund to deviate from its fundamental investment policies by investing in collateralized mortgage obligations that were not part of the Index, and by concentrating more than 25% of the Fund's total assets in mortgage-backed securities and collateralized mortgage obligations. The Fund deviated from its fundamental investment policies until about the end of February 2009. Fund shareholders suffered financial injury due to the Fund's deviation, as the Fund underperformed the Index during this time.

B

This case has a lengthy procedural history that includes the dismissal of successive amended complaints for failures to state claims. In June 2015, Northstar filed its Fourth Amended Complaint. In that complaint, Northstar asserted claims on behalf of Fund shareholders who purchased shares during the Breach period ("Breach class"), as well as those who purchased shares during the Pre-Breach period but held them during the Breach period ("Pre-Breach class"). The complaint alleges fourteen causes of action: seven pertaining to the Pre-Breach class, and seven pertaining to the Breach class. With respect to each class, Northstar alleged breach of fiduciary duties against both the Trust and the Trustees; breach of fiduciary duty against the Schwab Advisor; aiding and abetting breach of fiduciary duty against the Trustees and the Schwab Advisor; breach of contract as third-party beneficiary to the IAA against the Schwab Advisor; breach of contract against the Trust; and breach of

the covenant of good faith and fair dealing against the Schwab Advisor and the Trustees.  Northstar alleged that its claims, if barred by SLUSA, are nonetheless preserved by the "Delaware carve-out."

The district court granted in part and denied in part the defendants' motion to dismiss.  *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 135 F. Supp. 3d 1059 (N.D. Cal. 2015).  In particular, the court granted the motion to dismiss, with prejudice, Northstar's claims for breach of contract and breach of the covenant of good faith and fair dealing, concluding that SLUSA barred those claims and that they did not fall within the Delaware carve-out.  The district court also granted the motion to dismiss, with prejudice, Northstar's breach of fiduciary duty claims "insofar as these claims pertain to an alleged breach of fiduciary duty by the Trust."  *Id.* at 1089.  The district court reasoned that any such duties were owed by the Trustees, rather than by the Trust itself.  The district court further granted the motion to dismiss, with prejudice, Northstar's third-party beneficiary claims, breach of contract claims, and breach of the covenant of good faith and fair dealing claims, concluding that SLUSA also barred those claims and that they did not fall within the Delaware carve-out.  *Id.* at 1080–89.

The district court denied the motion to dismiss the remaining claims, however, which alleged breaches of fiduciary duties by the Trustees and the Schwab Advisor, and aiding and abetting such breaches.  *Id.* at 1077–80.  The district court reasoned that the defendants could not assert a SLUSA defense to these claims in a Rule 12(b)(6) motion, but that they could raise such a defense by filing a motion for judgment on the pleadings.  *Id.* at 1071.  The defendants subsequently moved for judgment on the pleadings, arguing that the breach of fiduciary duty and aiding and abetting claims were barred by SLUSA, and the district court granted

the motion. *Northstar Fin. Advisors Inc. v. Schwab Invs.*, No. 08-CV-04119-LHK, 2016 WL 706018 (N.D. Cal. Feb. 23, 2016). This appeal timely followed.

II

A

We review *de novo* a district court's order granting a motion to dismiss, *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1218 (9th Cir. 2009), as well as a grant of a motion for judgment on the pleadings, *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012). In evaluating Northstar's claims, we "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

B

SLUSA was enacted to stem the shift of class-action securities lawsuits from federal courts to state courts after passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006). In order to avoid PSLRA's heightened pleading requirements for class-action securities lawsuits, plaintiffs began asserting what were essentially federal securities law claims as state law causes of action in state courts. *Id.* Congress sought to end this practice by enacting SLUSA.

SLUSA bars a plaintiff class from bringing (1) a covered class action (2) based on state law claims (3) alleging that the defendants made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered

security.  *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1114–15 (9th Cir. 2013).  Here, the only element at issue is whether the plaintiff class alleged that the defendants made a misrepresentation or omission.

Several basic principles about SLUSA govern our analysis of Northstar's claims.  First, the Supreme Court has made clear that SLUSA's requirement that fraudulent statements be made in connection with the purchase or sale of a covered security must be construed broadly.  *See Dabit*, 547 U.S. at 86.  As the Court explained:

> The presumption that Congress envisioned a broad construction follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment.  A narrow reading of the statute would undercut the effectiveness of the 1995 Reform Act and thus run contrary to SLUSA's stated purpose, viz., "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives" of the 1995 Act.

*Id.* (quoting Securities Litigation Uniform Standards Act of 1998, Pub. L. 105-353, § 2(5), 112 Stat. 3227, 3227 (1998) (codified at 15 U.S.C. § 78a note)).

Second, consistent with this first principle, SLUSA precludes "state-law holder class action claims"—i.e., claims predicated on the notion that, even when shares are purchased based on accurate information, a claim under the 1934 Act, Pub. L. 73-291, 48 Stat. 881 (1934) (codified, as amended, at 15 U.S.C. § 78a *et seq.*), may be asserted when the seller fails to advise purchasers of subsequent facts that

affect those shares, and the shares are held in the face of the omission, *see Dabit*, 547 U.S. at 87 ("In concluding that SLUSA pre-empts state-law holder class-action claims of the kind alleged in Dabit's complaint, we do not lose sight of the general 'presum[ption] that Congress does not cavalierly pre-empt state-law causes of action.'" (alteration in original) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996))).

Third, while the Supreme Court is keenly aware of the fact that statutes purporting to preempt state law causes of action should generally be construed narrowly, it has explained that this general principle carries far less force when construing SLUSA, because SLUSA does not actually preempt any state law cause of action—it simply precludes using a class action as a device to vindicate claims collectively on behalf of fifty or more plaintiffs. *See Dabit*, 547 U.S. at 87.

Fourth, SLUSA's preclusion of a cause of action does not turn on the name or title given to a claim by the plaintiff. It turns instead on the "gravamen or essence of the claim." *Freeman*, 704 F.3d at 1115 ("As our sister circuits have recognized, the statute operates wherever deceptive statements or conduct form the gravamen or essence of the claim."). Courts must "look to the substance of the allegations," so that "plaintiffs cannot avoid preclusion 'through artful pleading that removes the covered words . . . but leaves in the covered concepts.'" *Id.* (alteration in original) (quoting *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 311 (6th Cir. 2009)). "Were it otherwise, SLUSA enforcement would reduce to a formalistic search through the pages of the complaint for magic words—'untrue statement,' 'material omission,' 'manipulative or deceptive device'—and nothing more." *Id.* (quoting *Segal*, 581 F.3d at 310).

The central question we are to assess, therefore, is whether the description of a defendant's conduct involves conduct specified in SLUSA—i.e., whether the complaint describes conduct by the defendant that would be actionable under the 1933 or 1934 Acts. If it does, and that conduct necessarily will be part of the proofs in support of the state law cause of action, SLUSA bars the claim, regardless of whether that conduct is an essential predicate of the asserted state law claim. *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 149 (2d Cir. 2015) (citing *In re Herald*, 730 F.3d 112, 119 (2d Cir. 2013); *Segal*, 581 F.3d at 311); *see also id.* at 146 (citing *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (3d Cir. 2005), as standing for this same principle).

The dissent contends that the legal standard governing SLUSA preemption varies materially from circuit to circuit. *See* Diss. at 24 n.1. We do not see as much daylight between the standards adopted by the various circuits as does the dissent. Indeed, the law appears to be uniform across the circuits. Consistent with the principles articulated above, for example, the Second Circuit explained in *Herald* that, "[s]ince 'SLUSA requires our attention to both the pleadings and the realities underlying the claims,' plaintiffs cannot avoid SLUSA 'merely by consciously omitting references to securities or to the federal securities law.'" 730 F.3d at 119 (quoting *Romano v. Kazacos*, 609 F.3d 512, 523 (2d Cir. 2010)); *see also Rayner v. E*TRADE Fin. Corp.*, No. 17-1487, — F.3d —, 2018 WL 3625378, at *2 (2d Cir. July 31, 2018) (same). The Third, Sixth, Seventh, and Eighth Circuits have held similarly. *See Zola v. TD Ameritrade, Inc.*, 889 F.3d 920, 924 (8th Cir. 2018) ("To determine whether a plaintiff has alleged a misrepresentation or omission of a material fact, we look at the substance of the allegations, based on a fair reading of the complaint. What matters is the conduct alleged, not the words used to describe

the conduct." (citation omitted)); *Lewis v. Scottrade, Inc.*, 879 F.3d 850, 854 (8th Cir. 2018) ("SLUSA applies if the gravamen of a state law claim involves an untrue statement or substantive omission of a material fact in connection with the purchase or sale of a covered security."); *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 930–31 (7th Cir. 2017) ("Allowing plaintiffs to avoid [SLUSA] by contending that they have 'contract' claims about securities, rather than 'securities' claims, would render [SLUSA] ineffectual, because almost all federal securities suits could be recharacterized as contract suits about the securities involved."); *Segal*, 581 F.3d at 310–11 (stating that courts must look to "the substance of a complaint's allegations in applying SLUSA" because "[t]he question under SLUSA is not whether the complaint uses the prohibited words," but rather "whether the complaint covers the prohibited theories, no matter what words are used (or disclaimed) in explaining them"); *Rowinski*, 398 F.3d at 300 (stating that "preemption does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another" and that "[a] contrary approach, under which only essential legal elements of a state law claim trigger preemption, is inconsistent with the plain meaning of the statute"). To the extent there are differences in the outcomes of these cases, we believe those differences are due to the application of the same well-established law to different facts, not to the adoption of different law, as the dissent suggests.

In sum, the proper SLUSA inquiry has two parts. We must determine whether: (1) the complaint's description of a defendant's conduct involves conduct specified in SLUSA, and (2) the alleged conduct will be part of the proofs in support of the state law cause of action. While a defendant's

conduct need not be an element of the state cause of action, the conduct still must be a fact on which the proof of that state cause of action depends.[2]

### III

We now apply this legal framework to Northstar's claims. Northstar divides its claims into those made on behalf of the Pre-Breach class and those made on behalf of the Breach class. For the reasons set forth below, we conclude that both sets of claims are barred by SLUSA.

### A

The Pre-Breach class claims depend on allegations of misrepresentations or omissions, and are therefore barred by SLUSA. Those claims are predicated on a 1997 Proxy Statement that Northstar alleged promised that the Trustees and Schwab Advisor would employ a particular investment strategy. Northstar alleged that the Trustees and Schwab Advisor deviated from that strategy in the 2007–2009 time period, during which they issued prospectuses reaffirming the 1997 investment objectives but made investments that were inconsistent with those objectives in material ways. Northstar therefore did not simply plead a garden-variety breach of contract claim. To the contrary, Northstar made clear that it intends to prove the alleged breach of contract by describing what the defendants did during the Breach Period, and alleging that the defendants acted without

---

[2] This legal framework is mandated by the plain language of the statute and the Supreme Court's interpretation thereof. Policy concerns about the scope of SLUSA's preemption provision should be addressed to Congress, not this court.

informing investors—either existing shareholders or new ones—of their actions.

Northstar expressly pled, in all of its complaints, that investors were not told about the deviation from the investment policy.  As to the Pre-Breach class members, Northstar additionally pled that those investors were induced to hold their shares in reliance on inaccurate information, and suffered losses thereby.  Northstar asserts that the Pre-Breach class members held their shares in reliance on the repetition of statements first made in the 1997 Proxy Statement, when they were no longer true.[3]  Northstar, in fact, pled that the terms of the contract between the parties were disclosed and reiterated in subsequent prospectuses. Northstar's complaint therefore makes clear that it is this conduct to which it will point to prove its breach of contract and breach of fiduciary duty claims.  It is Northstar itself that has chosen to tie the Pre-Breach class claims to the actions the defendants undertook during the 2007–2009 Breach Period.

The misrepresentations and omissions during the Breach Period are not extraneous to the contract claims—i.e., they are not wholly irrelevant or unconnected activities as the word "extraneous" is commonly understood.  They are, instead, at the heart of the *res gestae* of those claims.  They are the only material proofs to which Northstar points to establish that a breach occurred.  The Fourth Amended Complaint, thus, reaches activities of the defendants that are

---

[3] Northstar's only explanation for separating the Pre-Breach and Breach classes in its Fourth Amended Complaint is that it hoped to protect the claims of the Pre-Breach class members if the district court found that SLUSA was implicated during the Breach Period.

actionable under the securities laws, making them barred by SLUSA, regardless of the label placed on them.

This court's recent decision in *Hampton v. Pacific Investment Management Co.*, 705 F. App'x 558 (9th Cir. 2017), is instructive. There, although the plaintiff argued that its allegations asserted violations of contractual and fiduciary duties, "the complaint unmistakably describe[d] PIMCO Funds telling its investors it would do one thing— limit its exposure to certain risky assets—while it was in fact, *at the same time*, doing another—betting big on those same assets." *Id.* at 560. Hampton argued that, because the prospectus statement committing the Fund to a certain investment policy was not false at the time it was made, Hampton did not need to establish a falsehood to prove its claims. The panel disagreed, noting that, like here, the statement was made multiple times, including after it allegedly had ceased to be true. Based on this conclusion, the panel found the holder claims barred by SLUSA. *Id.* at 560–61. The facts here parallel those before this court in *Hampton*. The defendants are accused of promising, and continuing to promise, one thing—that they would follow the stated investment objectives—while in fact doing another—deviating from those objectives across multiple prospectuses and failing to disclose that fact to the original investors.

The dissent views SLUSA preemption more narrowly, stating that a state law claim is not barred by SLUSA unless "a misrepresentation is an essential fact on which the original claim depends." Diss. 28. As described above, however, the law does not require us to undertake an analysis with only the elements of the state law cause of action in mind. Such an analysis would limit our consideration to a pleading's satisfaction of the bare elements of the state law claim. Under the dissent's approach, if we found that a

complaint alleged the elements of a state law claim, our analysis would end regardless of the complaint's other allegations.

This conclusion is inconsistent with SLUSA. Indeed, various circuits, including this one, have rejected such an approach. *See Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1154 (9th Cir. 2017) (noting that the plaintiffs' "pleadings carefully allege[d] at least several causes of action whose elements do not include manipulative conduct," but determining nonetheless that "the substance of all their allegations" was that the defendant had engaged in a "deceptive practice actionable under federal securities law"); *see also Zola*, 889 F.3d at 924 (concluding that the "gravamen" of plaintiffs' complaints "involves a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" and rejecting the "argument that characterizing his complaint as alleging an omission of material fact could recast any breach of contract claim into a fraud claim"); *Holtz*, 846 F.3d at 931 ("The possibility that plain vanilla contract claims can proceed under state law creates an incentive to characterize all securities claims as 'contract' suits and avoid federal preemption. . . . That sets up an opportunity for artful pleading."); *Rowinski*, 398 F.3d at 300 (rejecting plaintiff's claim "that because 'misrepresentation' is not an essential legal element of [the plaintiff's] claim under Pennsylvania contract law, the factual allegations of misrepresentation included in the complaint are irrelevant to the SLUSA inquiry," and holding that the plaintiff's "suggested distinction—between the legal and factual

allegations in a complaint—is immaterial under the statute," which looks only to what the complaint is "alleging").**[4]**

Here, the Pre-Breach class claims arise from more than the alleged *fact* of the defendants' breaches; their claims are only possible because of the defendants' *concealment* of those breaches. The claims are no less tied to the defendants' misstatements and omissions during the Breach Period than are the Breach Class claims themselves, described in greater detail below. We therefore conclude that the Pre-Breach class claims are barred by SLUSA.

## B

The Breach class's claims similarly depend on allegations of misrepresentations or omissions and are barred by SLUSA. At the time that the Breach class members purchased their securities, the defendants were already breaching any contractual obligations and related duties owed to the class. Had the defendants not made any misrepresentations or omissions with respect to these breaches—that is, had the breaches been disclosed—the Breach class would not be able to maintain its state law claims. As a general rule, when a contracting party has knowledge of a breach by the other party and nonetheless accepts some performance of the contract, he or she has

---

**[4]** We believe that the dissent's application of SLUSA to the Pre-Breach class claims could lead to illogical results. Under the dissent's theory, Pre-Breach claimants would move forward with their claims in federal court, while Breach claimants would have to resort to individual state court actions even though all claims are based on the same alleged behavior by the defendants. It is unclear, under the dissent's theory of contract breach, how any holder claim could be stated such that SLUSA preclusion would apply. Yet, the Supreme court has made clear that holder claims are within the reach of SLUSA preemption. *See Dabit*, 547 U.S. at 86–89.

waived the breach.  *See* 23 Williston on Contracts § 63:9 (4th ed.).  If the Breach class members had knowledge of the breach at the time that they purchased their securities, they would not be able to maintain claims for breach against the defendants.  Allegations of misrepresentations or omissions are thus factual predicates to their thirteenth claim (for breach of contract), to their twelfth claim (for relief as a third-party beneficiary of the IAA), and to their fourteenth claim (for breach of the covenant of good faith and fair dealing).

The Breach class's fiduciary duty claims fare no better. To prevail on a breach of fiduciary duty claim under Massachusetts law, a plaintiff must establish, among other things, that a fiduciary duty exists.  *See Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*, 81 N.E.3d 782, 842 (Mass. App. Ct. 2017).  "A fiduciary duty exists 'when one reposes faith, confidence, and trust in another's judgment and advice.'"  *Doe v. Harbor Sch., Inc.*, 843 N.E.2d 1058, 1064 (Mass. 2006) (quoting *Van Brode Grp., Inc. v. Bowditch & Dewey*, 633 N.E.2d 424, 428 (Mass. App. Ct. 1994)).  Had the defendants made no misrepresentations during the Breach period—i.e., had they disclosed to the Breach class that the Fund was no longer abiding by its fundamental investment objectives—there would have been no grounds for the Breach class to repose trust in the defendants' judgment and advice.  The fiduciary duty claims thus implicitly depend on allegations of misrepresentations or omissions.

Because the Breach class claims depend on a misrepresentation or omission of a material fact, these claims are barred by SLUSA.

IV

The Delaware carve-out does not save either the Pre-Breach or Breach class claims.[5]  The carve-out provides, in relevant part, that class actions that would otherwise be barred by SLUSA are not subject to dismissal if (1) they are "based upon the statutory or common law of the State in which the issuer is . . . organized," and (2) they constitute "permissible actions" defined by the statute.  15 U.S.C. § 77p(d)(1).

With the exception of its third-party beneficiary claims, which arise under the IAA and are governed by California law, all of Northstar's claims are based on the statutory and common law of Massachusetts, the state in which the Schwab Trust is organized.[6]  The remaining question is whether the claims constitute permissible actions under the statute.   As relevant to Northstar's claims, "permissible actions" include a covered class action that "involves":

---

[5] The district court did not abuse its discretion in finding that the defendants did not waive their Delaware carve-out arguments.  *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) ("We review the district court's application of the doctrine of judicial estoppel to the facts of this case for an abuse of discretion."); *Novato Fire Prot. Dist. v. United States*, 181 F.3d 1135, 1140–41 (9th Cir. 1999) (noting that, on appeal, the court considers whether the district court abused its discretion in refusing to apply the doctrine of waiver).  Indeed, in our recent decision in this matter, we stated that the district court should consider "whether the allegations in the Third Amended Complaint can survive under SLUSA."  *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1050 (9th Cir. 2015).

[6] Because the third-party beneficiary claims (the fifth and twelfth claims) are based on California law and the Trust is organized in Massachusetts, Northstar concedes that the Delaware carve-out does not preserve those claims.

(ii) any recommendation, position, or other communication with respect to the sale of securities of the issuer that—

(I) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

(II) concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

*Id.* § 77p(d)(1)(B)(ii).

Northstar's Pre-Breach class claims are not "permissible actions" under the statute because the communications Northstar alleges the issuer made do not satisfy the requirement that the communications concern equity holders voting their securities shares. In particular, the wrongdoing Northstar alleges in this action is the defendants' failure to follow, during the Breach Period, the fundamental investment practices shareholders approved in the 1997 vote; the injury that Northstar alleges derives only from the holding of shares based on the defendants' alleged omissions during that Breach Period. The plain language of the statute requires that the communications "concern[] *decisions* . . . with respect to voting . . . securities[.]" Northstar does not allege that the false disclosures and material omissions, made during the Breach Period, concern any vote. Northstar admits, both in its briefing and in the final amended complaint, that the only vote with respect to this action was the 1997 vote on the 1997 Proxy Statement—there was no vote during the Breach Period.

The Breach class claims are also not "permissible actions" under the statute, because they likewise do not involve any communication that "concerns decisions of those equity holders with respect to voting their shares." The Breach class claims that are subject to SLUSA are based on misrepresentations that occurred between 2007 and 2009. The only vote that occurred with respect to these securities occurred in 1997. The misrepresentations that underlie the Breach class claims were thus not made to shareholders in advance of, or to influence, any vote. Those communications therefore do not "concern[]" any "decisions" of shareholders with respect to voting their securities. The carve-out does not save Northstar's claims.

We therefore affirm the district court's dismissal of all of Northstar's claims.

V

The district court erred, however, in dismissing Northstar's claims with prejudice. Northstar should be granted leave to amend its complaint.

To the extent that SLUSA bars a plaintiff's claims, "it does so by depriving the district court of jurisdiction to hear his state-law claims on a class-wide basis." *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 847 (9th Cir. 2017). Thus, it is error to dismiss such claims under Rule 12(b)(6); they should be dismissed under Rule 12(b)(1) without prejudice. *Id.* We therefore reverse the district court's

contrary ruling and remand to give Northstar the opportunity to amend its complaint.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Each party shall bear its own costs.

---

THOMAS, Chief Judge, concurring in part and dissenting in part:

The Supreme Court has rejected an interpretation of the Securities Litigation Uniform Securities Act ("SLUSA") that "would limit the scope of protection under state laws that seek to provide remedies to victims of garden-variety fraud." *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1068 (2014). The Pre-Breach claims fall comfortably within this category of actions that fall outside SLUSA's reach. Thus, in my view, the majority extends SLUSA's application too far, reaching ordinary state-law claims that are not within the statute's ambit. Therefore, I respectfully dissent from that portion of the opinion.

SLUSA bars a class action state-law claim only if that claim requires proof of a misrepresentation or omission of material fact. Even if a misrepresentation or omission is not a legal element of the state-law claim, SLUSA may bar the claim when such misrepresentation is a "factual predicate" of the claim. *LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008).

Under this approach, we only inquire into what facts the plaintiffs must prove in order to establish liability under the theory stated in their complaint. *See In re Kingate*, 784 F.3d

128, 142–43 (2d Cir. 2015) (holding that SLUSA does not apply when a misrepresentation "is extraneous to the complaint's theory of liability"); *LaSala*, 519 F.3d at 141 (holding that SLUSA applies when a misrepresentation "gives rise to liability" and is not "merely an extraneous detail").

Thus, application of SLUSA does not turn on facts that are contained in the complaint, but that are necessary to establish liability.[1]

---

[1] There is an existing circuit split on SLUSA's application. *See, e.g.,* Samuel Wolff, *Securities Litigation Update--Part 2: Securities Litigation Uniform Standards Act*, 35 No. 1 Sec. and Fed. Corp. Law Rep. 1 (2013); *Goldberg v. Bank of Am., N.A.*, 846 F.3d 913, 922-25 (7th Cir. 2017) (Hamilton, J., dissenting) (describing three- or four-way circuit split on SLUSA's application).

The Second and Third Circuits have adopted a relatively narrow approach, holding that SLUSA precludes a claim only if prevailing on the claim requires proving the fact of a misrepresentation or an omission. The Second Circuit has held that "state law claims that do not *depend* on false conduct are not within the scope of SLUSA, even if the complaint includes peripheral, inessential mentions of false conduct." *In re Kingate*, 784 F.3d at 132 (emphasis in original). The Third Circuit has held that SLUSA bars a state law claim when "allegations of a material misrepresentation serve as the factual predicate of" the claim. *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (3d Cir. 2005). The Third Circuit later clarified that a "factual predicate" means a fact essential to the state law claim. *LaSala*, 519 F.3d at 141 ("To be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous detail. This distinction is important because complaints are often filled with more information than is necessary.").

The Sixth and Seventh Circuits have given SLUSA a broader application. The Sixth Circuit has held that a state law claim is barred under SLUSA if the complaint includes any allegations of

Applying this standard, I agree with the majority's conclusion that the Breach class claims are barred by SLUSA, because proving those claims would require proving a misrepresentation or omission.  However, I respectfully part ways from the majority as to the Pre-Breach class claims.  Proof of those claims does not require proof of a misrepresentation or omission of material fact.  Therefore, the Pre-Breach claims are not barred by SLUSA.

The Pre-Breach class claims are all, in effect, versions of a state-law breach of contract claim.  The majority opinion states that misrepresentations and omissions during the Breach Period are "at the heart of the *res gestae*" of the Pre-Breach class claims, and that "[t]hey are the only material proofs to which Northstar points to establish that a breach occurred."  Opinion at 16.  The majority opinion later states that the Pre-Breach class claims "are only possible because of the defendants' *concealment* of" its breaches of contract.  Opinion at 19.[2]

---

misrepresentation, regardless of whether those allegations are essential to the success of the claim. *See Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 311 (6th Cir. 2009) (SLUSA "does not ask whether the complaint makes 'material' or 'dependent' allegations of misrepresentation in connection with buying or selling securities. It asks whether the complaint includes these types of allegations, pure and simple."). The Seventh Circuit has held that a state law claim is barred "if the allegations of the complaint make it likely that an issue of fraud will arise in the course of the litigation." *Brown v. Calamos*, 664 F.3d 123, 128-29 (7th Cir. 2011); *see also Goldberg*, 846 F.3d at 924 (Hamilton, J., dissenting) (observing that the majority opinion "go[es] beyond the *Brown* standard and adopt[s] a new, fourth standard," under which "virtually any breach of contract claim is preempted").

[2] For this proposition, the majority cites our unpublished and non-precedential decision in *Hampton v. Pac. Inv. Mgmt. Co.*, 705 F. App'x

I respectfully disagree.  The complaint states a claim for breach of contract that can be proven true with no reference to a misrepresentation or omission.  The Pre-Breach class had a contract with the defendants through the 1997 Proxy Statement, and the defendants breached that contract.  The district court itself, describing the facts alleged in the complaint, made clear that plaintiffs could prove the breach without proving a misrepresentation or omission:

> Northstar alleges that Defendants deviated from the Fund's investment objective to track the Lehman Brothers U.S. Aggregate Bond Index (the "Lehman Index") in two ways. First, Northstar alleges that, starting around August 31, 2007, the Fund began investing in high risk non-U.S. agency collateralized mortgage obligations ("CMOs") that were not part of the Lehman Index and that were substantially more risky than the U.S. agency securities and other instruments that comprised the Lehman Index.  Second, Northstar alleges that, beginning around August 31, 2007, the Fund deviated from the Fund's investment objectives (which

558 (9th Cir. 2017), to support its conclusion that the Pre-Breach class claims are barred.  As a non-precedential opinion, *Hampton* does not control us and carries only persuasive weight.  Nonetheless, it is easily distinguished.  In *Hampton*, we considered claims brought on behalf of a class that acquired shares both before *and* after the defendant began deviating from the terms of an investment policy.  *Id*. at 560.  We expressly declined to address "the question of whether a class composed only of people who bought shares while the [policy] was still being followed would have their claims barred by SLUSA on account of the policy later becoming false."  *Id.* at 561 n.2.  *Hampton* is inapposite to the Pre-Breach class claims.

> prohibited investing more than 25% of the Fund's assets in any one industry, unless such concentration was necessary to track the Lehman Index) by investing more than 25% of the Fund's assets in U.S. agency and non-agency mortgage-backed securities and CMOs.

*Northstar Fin. Advisors Inc. v. Schwab Investments*, No. 08-CV-04119-LHK, 2016 WL 706018, at \*1 (N.D. Cal. Feb. 23, 2016) (internal citations omitted).

These facts are sufficient to prove that the defendants breached the contract.[3]  None of these facts involves any misrepresentation or omission of material fact.  The Pre-Breach class did not need to prove a misrepresentation or omission in order to prevail on its breach of contract claim. That claim—and the Pre-Breach class's other similar claims—are not barred by SLUSA.

Northstar's complaint may contain extraneous references to misrepresentations, but such references do not bring the complaint within SLUSA's ambit.  *See LaSala*, 519 F.3d at 141. ("While it may be unwise . . . to set out extraneous allegations of misrepresentations in a complaint, the inclusion of such extraneous allegations does not operate

---

[3] To prevail on a claim for breach of contract under Massachusetts law, a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result.  *Singarella v. Boston*, 173 N.E.2d 290, 291 (Mass. 1961).  The majority opinion does not assert, nor does any party claim, that the proof of any other element of this cause of action would depend on proof of a misrepresentation or omission of material fact.

to require that the complaint must be dismissed under SLUSA."). SLUSA does not bar claims for which a plaintiff class may need to allege a misrepresentation in order to respond to a hypothetical affirmative defense. SLUSA only prohibits a claim when a misrepresentation is an essential fact on which the original claim depends. The Pre-Breach class can prove its claims without proving any misrepresentation or omission of material fact. That such facts may be present in the complaint, or that they could arise during the course of litigation, is not enough to bar the claims under SLUSA. Under the majority's approach, any ordinary state law breach of contract claim would be preempted by SLUSA if the breaching party failed to disclose its breach (which would be the usual case) because the failure to disclose could be characterized as a misrepresentation or omission. This interpretation stretches SLUSA's application to a degree not intended by Congress.

For these reasons, I respectfully dissent in part.